IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILBERT WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1529 |
| | ) | |
| STATE OF PENNSYLVANIA, et. al., | ) | United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

**Cynthia Reed Eddy, United States Magistrate Judge**

## I.     PROCEDURAL BACKGROUND

*Pro se* Plaintiff Philbert Wilson initiated this action by filing a motion to proceed *in forma pauperis* on October 21, 2013, (ECF No. 1), and his complaint was filed on November 1, 2013.  (ECF No. 2).  Since then, with permission from the Court, Plaintiff has amended his complaint three times.  Each time that Plaintiff amended his complaint, there were pending motions to dismiss the preceding complaint, which were denied as moot to be refiled.  *See* (Text-Only Order from 2/6/2014; Text-Only Order from 4/1/2014; ECF No. 54 from 11/25/2014).  In the third amended complaint, Plaintiff names the following Defendants: State of Pennsylvania,[2]

---

[1]     By  Consent of the parties (ECF Nos. 19-21, 72) and pursuant to  28 U.S.C. § 636(c), the undersigned has full "authority over dispositive motions…and entry of final judgment, all without district court review."  *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d 530, 535 (M.D.Pa. 2007).

[2]     *Hereinafter* "Commonwealth of Pennsylvania," as Pennsylvania is a Commonwealth, and not a State.

Dennis Hoerner, Brian Covert, Mary Rosetta, and the City of Newcastle Police Department.[3]

(3rd Am. Compl., ECF No. 55).[4]

Currently pending before the Court are four motions to dismiss filed by the above Defendants. (ECF Nos. 57, 62, 65, 67). Plaintiff has responded to each of these motions. (ECF Nos. 42, 45, 46, 68, 69, 71).[5] Accordingly, the matter has been fully briefed and is ripe for disposition. The Court will address each of the four motions in separate headings below.

## II.     FACTUAL BACKGROUND[6]

---

[3]     *Hereinafter* "City of New Castle" or "the City," as New Castle is two words, and a city's police department is not an appropriate defendant. The Court notes that this Defendant has not raised any issue regarding Plaintiff's designation of its name.

[4]     The third amended complaint also names the Pennsylvania Board of Probation and Parole and Beth Grear as Defendants, but they were dismissed without prejudice by separate Order pursuant to Federal Rule of Civil Procedure 4(m) as a result of Plaintiff's inability to effectuate service. (ECF No. 70).

[5]     On January 12, 2015, the Court entered a Text-Only Order/Response Briefing Schedule relating to three of the four pending motions to dismiss (ECF Nos. 57, 62, 65). Defendant Hibberd had been recently added to the suit and had not yet filed a motion to dismiss, so this Order did not pertain to her. With regard to the other three pending motions, the Court noted that Plaintiff's second amended complaint and third amended complaint contained the same allegations against those Defendants, that the Defendants made the same arguments in their motions to dismiss the third amended complaint as they had in their motions to dismiss the second amended complaint, and that Plaintiff had already responded to those Defendants' motions to dismiss the second amended complaint. (Text-Only Order dated 1/12/2015). Therefore, the Court accepted Plaintiff's previous responses to the motions to dismiss the second amended complaint as responses to the motions to dismiss the third amended complaint. (*Id.*). The Court also allowed Plaintiff to supplement his responses on or before 2/9/2015. On February 25, 2015, the Court received a response to Defendant Covert's motion (ECF No. 68) and a brief in opposition to the City of New Castle's motion (ECF No. 69), both of which indicate they were sent on February 21, 2015 (twelve days after they were due). These documents are substantially similar to the documents that he previously submitted, so the Court will accept them despite being late. To date, Plaintiff has not filed an additional response or brief in opposition as to the PBPP Defendants' motion (ECF No. 65), so the Court will solely rely on his previous response (ECF No. 45).

[6]     This recitation of facts is taken primarily from the third amended complaint. However, when plaintiff filed his third amended complaint, he did not attach any of the exhibits that were attached to the second amended complaint. Therefore, the following documents were attached to the second amended complaint but not the third amended complaint: (1) an Order from the Court of Common Pleas of Lawrence County, Pennsylvania issued by the Honorable Dominick Motto, president judge, dated 7/15/2013, ordering that Plaintiff be released from the Lawrence County Jail (Pl.'s Ex. A, ECF No. 35-1) ; (2) an Order to Detain Plaintiff for Forty-Eight Hours dated May 12, 2013 issued by the PBPP (Pl.'s Ex.

On May 12, 2013, Plaintiff was arrested by Officers from the City of New Castle Police Department pursuant to a forty-eight (48) hour detainer issued by the PBPP and was taken to the Lawrence County Jail. (3rd Am. Compl. ¶ 11, ECF No. 55); (Pl.'s Ex. B, ECF No. 35-2). From May 12, 2013 until July 15, 2013, Plaintiff remained incarcerated in the Lawrence County Jail. (3rd Am. Compl. ¶ 11, ECF No. 55). On May 13, 2013, the day after Plaintiff was arrested and brought to the Lawrence County Jail, a second detainer was issued against Plaintiff from the Delaware County Special Probation division of the PBPP. (Pl.'s Ex. C, ECF No. 35-3). The second detainer, "authorized and directed [Defendant Covert] to commit and detain [WILSON, PHILBERT M] for violation of parole/probation." (*Id.*). The second detainer did not contain an expiration date. (*Id.*). A few days later, on May 16, 2013, a bench warrant was issued by the Court of Common Pleas of Delaware County, Criminal Division and provided that the warden (Defendant Covert) was "commanded to take [PHILBERT WILSON] into custody" based on a violation of probation/parole reported by Defendant Boozer. (3rd Am. Compl. ¶ 11); (Pl.'s Ex. D, ECF No. 35-4).

Plaintiff alleges that after he was initially arrested, he was informed by the arresting Officers that he was not being charged with anything. (3rd Am. Compl. ¶ 11, ECF No. 55). Additionally, the arresting Officers allegedly "either inadvertently or intentionally threw away

---

B, ECF No. 35-2); (3) a Warrant to Commit and Detain Plaintiff dated May 13, 2013 issued by the Delaware County Special Probation division of the PBPP (Pl.'s Ex. C, ECF No. 35-3); and (4) a bench warrant issued by the Court of Common Pleas of Delaware County, Criminal Division (Pl.'s Ex. D, ECF No. 35-4).

Although the above documents are not attached to the third amended complaint, Plaintiff's allegations sufficiently reference them. Moreover, Defendants do not challenge the relevancy or authenticity of these documents. In fact, most of the Defendants have reasserted their arguments as if these documents were still part of the record. Accordingly, in light of the liberal pleading standards afforded to *pro se* plaintiffs, and because it does not appear that Plaintiff intentionally sought to omit these documents given that the allegations in the second and third amended complaints are virtually identical, the Court will consider the same, as they help give context to Plaintiff's allegations and are referenced in the third amended complaint.

plaintiff's keys to his house intending to cause plaintiff further aggravation." (*Id.* at ¶ 18). Plaintiff claims that while in jail, he made "numerous requests" to the warden, Defendant Covert, to release him from jail. (*Id.*at ¶ 11). However, Defendant Covert told Plaintiff that he was given orders from the PBPP, through Defendant Boozer, a probation officer, to hold Plaintiff. (*Id.* at ¶¶ 3, 11). Plaintiff contends that Defendant Covert improperly held him in jail despite learning through his communications with the officials from Delaware County that they "had refused to take plaintiff." (*Id.* at ¶ 20).

Plaintiff also asserts that several employees of the PBPP were at fault for his arrest and incarceration from May 12, 2013 until July 15, 2013. Plaintiff allegedly complained to Defendant Boozer "numerous times about his predicament and of the need to bring him before a judge for a determination of the justification for plaintiff's continued incarceration." (*Id.* at ¶ 19). However, Defendant Boozer allegedly "laughed at plaintiff, instructing him to save his breath and to get used to his situation since he would be there a long time." (*Id.*). Plaintiff further avers that Defendant Dennis Hoerner, supervisor of Defendant Boozer, "positively encouraged and pushed [Boozer] to do all the nefarious deeds that kept plaintiff in jail without lawful excuse." (*Id.* at ¶ 21). Plaintiff avers that Defendant Hoerner had knowledge of all of Plaintiff's complaints and knowingly violated the laws of Pennsylvania and the United States Constitution. (*Id.*). Additionally, Defendant Mary Rosetta, probation manager and supervisor of Defendants Hoerner and Boozer, allegedly approved their decisions and conspired with them to deprive Plaintiff of his rights. (*Id.* at ¶ 22). Finally, Plaintiff asserts that Defendant Danielle Hibberd, Deputy Executive Director of the PBPP, signed the warrant to commit and detain Plaintiff without any basis and did not arrange any hearings in Plaintiff's case. (*Id.* at ¶ 23). According to Plaintiff, Defendant Hibberd "failed to adequately train [her] employees to perform

their duties in consonance to the laws and constitution of the United States hence leading to the loss and suffering levelled on plaintiff." (*Id.*)

While Plaintiff was incarcerated, he filed a petition for writ of habeas corpus in the Court of Common Pleas of Lawrence County. (*Id.* at ¶¶ 11-14). On July 15, 2013, a hearing was held regarding said petition in which President Judge Dominick Motto ordered Defendant Covert to release Plaintiff from jail, finding that Plaintiff's continued detention in the Lawrence County Jail was unlawful. (*Id.*); (Pl.'s Ex. A, ECF No. 35-1). According to this Order, Defendant Covert, "through his representatives promptly notified Delaware County of [Plaintiff's] incarceration," but "Delaware County ha[d] failed and refused to take physical custody of [Plaintiff] or conduct a bench warrant hearing or any other form of detention hearing." (*Id.*). Judge Motto found that the Lawrence County Officials, including Defendant Covert, complied with Pa. R. Cr. P. 150(A)(4) by giving prompt and repeated notices to the Delaware County Officials. (*Id.*). However, because the Delaware County officials did not comply with Pa. R. Cr. P. 150 by failing to give Plaintiff a hearing in connection with the bench warrant or detainers, Judge Motto concluded that Plaintiff's continued incarceration was unlawful and ordered that Plaintiff be released. (*Id.*). Defendant Covert immediately complied with this Order.

## III. STANDARD OF REVIEW

### A. Pro Se Litigants

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–521 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's

unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997)*, overruled on other grounds by Abdul-Akbar v. McKelvie,* 239 F.3d 307 (3d Cir. 2001). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co*., 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

> **B.     Motion to Dismiss Pursuant to Rule 12(b)(6)**

Recently, our Court of Appeals aptly summarized the appropriate standard of review when considering a defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) as follows:

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler* [*v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)] (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). Additionally, while "[t]he District Court must accept the complaint's well-pleaded facts as true, [it] may disregard

any legal conclusions." *Fowler*, 578 F.3d at 210. (citing *Iqbal*, 556 U.S. at 663). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In addition to the complaint itself, the Court may consider "exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Inds., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "In considering external yet undisputably relevant and authentic documents, the court need not covert the motion to dismiss into a motion for summary judgment." *Reginella Const. Co., Ltd. v. Travelers Cas. And Sur. Co. of America*, 949 F.Supp.2d 599, 609 (W.D.Pa. 2013) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

Moreover, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).

## IV. DISCUSSION

The third amended complaint asserts the following federal claims under 42 U.S.C. § 1983: violation of the Fourth, Thirteenth, and Fourteenth Amendments of the United States Constitution and a *Bivens* claim.[7] It also asserts the following claims under Pennsylvania law:

---

[7] Neither the second amended complaint (ECF No. 35) nor the third amended complaint (ECF No. 55) mention a Fifth Amendment violation. However, in Plaintiff's response to the City of New Castle's motion, Plaintiff asserted that the Court should not dismiss his Fifth Amendment claim. (ECF Nos. 42 at 3-4, 68 at 5-6). The Court notes that the first amended complaint did seek relief under the Fifth Amendment. *See* (ECF No. 26 ¶ 2). But even assuming *arguendo* that this claim is appropriately part of the third amended complaint, it still fails. Though Plaintiff did not specify which portion of the Fifth

violation of Article 1, § 8 of the Pennsylvania Constitution and violations of the state common law torts of false arrest, false imprisonment, battery, and infliction of emotional distress.[8]

The Court will address the motions individually and in the same order in which they were filed.  To the extent that a Defendant's motion results in the dismissal of claims as to other Defendants, the Court will not repeat the same analysis when addressing the other Defendants' subsequent motions.  The Court will likewise address the claims that are dismissed as to the unknown officers as a result of the other Defendants' arguments, notwithstanding that the unknown officers are not yet identified or parties to this suit.  *See Coulter v. Unknown Probation Officer*, 562 F. App'x 87, 89 n. 2 (3d Cir. 2014) (district court properly dismissed complaint against unknown officer "based on grounds raised by [moving] defendants, but common to all defendants, and to which [the plaintiff] had an opportunity to respond.").

### A.    Covert's Motion (ECF No. 57)

#### 1.  Thirteenth Amendment

Defendant Covert, warden of the Lawrence County Jail during the relevant time period, first asserts that Plaintiff's contention in the third amended complaint that the Defendants' conduct violated the Thirteenth Amendment of the United States Constitution should be dismissed with prejudice.  (Covert's Br. in Supp. at 6, ECF No. 58).  Section 1 of the Thirteenth

---

Amendment he was relying upon, based on his factual allegations, he seems to be seeking relief under the Due Process Clause of the Fifth Amendment.  This clause applies "'only to actions of the federal government – not to those of state or local governments.'"  *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 9 (3d Cir. 2007) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001)).  Thus, because none of the Defendants are members of the federal government, Plaintiff cannot prevail under this clause of the Fifth Amendment.  As a result, to the extent that Plaintiff is seeking relief thereunder, he has failed to state a claim upon which relief can be granted, so it is appropriately dismissed.

[8]      The Court also notes that the third amended complaint contains a count entitled "CAUSING PLAINTIFF LOSS OF EMPLOYMENT" in which he asserts that the collective conduct of all of the Defendants resulted in the loss of his employment.  (3rd Am. Compl at 7, ECF No. 55).  The Court will treat this claim as a request for damages instead of an independent count.

Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."  U.S CONST. amend XIII, § 1.  In *United States v. Kozminski*, 487 U.S. 931 (1988), the Supreme Court explained that

> [t]he primary purpose of the [Thirteenth] Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase "involuntary servitude" was intended to extend "to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results."

*Kozminski*, 487 U.S. at 942 (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)).  Here, Plaintiff has made no factual allegations to warrant relief under the Thirteenth Amendment.  Because this claim is applicable to all of the Defendants, and allowing amendment would be futile, it is dismissed in its entirety with prejudice.

### 2.  *Bivens* Claim

Defendant Covert seeks to dismiss Plaintiff's claim pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971).  (Covert's Br. in Supp. at 7, ECF No. 58).  In *Bivens*, "the Supreme Court recognized an implied right of action for damages against *federal agents* who have violated a person's Fourth Amendment rights."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (citing *Bivens*, 403 U.S. at 91) (emphasis added).  Here, Defendant Covert is not a federal agent, and neither are any of the other Defendants.  Consequently, because this claim is applicable to all of the Defendants, it is dismissed in its entirety with prejudice, as allowing amendment would be futile.

### 3.  Absolute Immunity

Defendant Covert also asserts that the Fourth Amendment and Fourteenth Amendment claims against him in the third amended complaint should be dismissed because "[b]oth of these

theories are barred by the quasi-judicial immunity afforded to officials acting in accordance with facially valid court orders." [9]   (Covert's Br. in Supp. at 7-8, ECF No. 58).  The Court agrees.

If a warden takes actions pursuant to a facially valid court order, he is entitled to absolute immunity under § 1983 claims for damages.  *Hamilton v. Leavy*, 322 F.3d 776, 782-783 (3d Cir. 2003); *see also Coudriet v. Vardaro*, 545 F. App'x 99, 103 (3d Cir. 2013) (holding that the warden was entitled to quasi-judicial immunity for claims that he illegally detained the plaintiff in connection with fraudulent court orders); *McGeachy v. Doe*, 444 F. App'x 510, 512 (3d Cir. 2011) (holding that several defendants, including the warden, were entitled to absolute immunity for acting in accordance with a facially valid court order regarding an extradition); *Patterson v. Von Riesen*, 999 F.2d 1235, 1241 (8th Cir. 1993) ("[A] warden is absolutely immune from damages flowing from the fact of a prisoner's incarceration, when that incarceration occurs pursuant to a facially valid order of confinement."); *Lockhart v. Hoernstine*, 411 F.2d 455, 459-460 n. 11 (3d Cir. 1969) (stating that it is a "well-grounded principle that any public official," including a prison warden, "acting pursuant to court directive is also immune from suit.").

Defendant Covert correctly argues that the law does not require him to second guess the validity of court orders and that Pa. R. Cr. P. 150 does not impose the duty to provide timely hearings upon wardens.  The bench warrant issued on May 16, 2013 and the second detainer issued on May 13, 2013 both ordered Defendant Covert to hold Plaintiff without specifying an expiration date.  Defendant Covert had repeated communications with officials from Delaware County to attempt to transfer Plaintiff; however, the Delaware County officials apparently disregarded these attempts.

---

[9]  "Quasi-judicial immunity is absolute immunity."  *Dotzel v. Ashbridge*, 438 F.3d 320, 324  n. 1 (3d Cir. 2006).

Although Plaintiff claims that Defendant Covert should have released him after learning of the Delaware County officials' refusal to transfer Plaintiff and/or should have provided him with hearings on his detention, Defendant Covert cannot face liability for following these facially valid orders. These orders did not become invalid until Judge Motto ordered that Plaintiff be released from jail. *See Rivera v. Algarin*, 350 Fed. App'x 703, 709 (3d Cir. 2009) (finding that the court order detaining the plaintiff was facially valid until the plaintiff's petition for writ of habeas corpus was successfully granted). As a result, Defendant Covert is entitled to absolute immunity with regard to Plaintiff's Fourth Amendment and Fourteenth Amendment claims. These claims against Defendant Covert are dismissed with prejudice because allowing amendment would be futile.

### 4. Claim for Damages under Pennsylvania Constitution

Defendant Covert also seeks to dismiss Plaintiff's pendent claim for money damages under Article 1, § 8 of the Pennsylvania Constitution. In *Hellman v. Kercher*, this Court noted that

> [t]he Supreme Court of Pennsylvania has not yet ruled on the issue of whether the Pennsylvania Constitution provides a cause of action for damages. Indeed, we have located no Pennsylvania case which implies a private right of action for damages for state constitutional violations. We have, however, located opinions from the Commonwealth Court of Pennsylvania, as well as our sister courts, explicitly holding that no such right exists under the Pennsylvania Constitution. *See R.H.S. v. Allegheny County Dept. of Human Servs., Office of Mental Health*, 936 A.2d 1218, 1225–226 (Pa.Commw.Ct.2007) appeal denied, 598 Pa. 753, 954 A.2d 579 (2008) ("neither statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution") (quoting *Jones v. City of Phila.*, 890 A.2d 1188 (Pa.Commw.Ct.2006), appeal denied, 589 Pa. 741, 909 A.2d 1291 (2006)); *Underwood v. Beaver County Children And Youth Servs.*, No. 03–1475, 2007 WL 3034069, *2 (W.D.Pa. Oct.7, 2007) (citing multiple cases in accord); *Ryan v. Gen. Machine Prods.*, 277 F.Supp.2d 585, 595 (E.D.Pa.2003). Accordingly, we find that plaintiffs' claim for damages based upon the Pennsylvania Constitution fails.

*Hellman v. Kercher*, 2009 WL 586511, *5 (W.D. Pa. 2009); *see also Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 688 (3d Cir. 2011); *Balletta v. Spadoni*, 47 A.3d 183, 193 (Pa. Commw. Ct. 2012); *Shuey v. Schwab*, 2010 WL 479938, *7 (M.D. Pa. 2010); *Bodnar v. Wagner*, 2010 WL 56097, *7 (M.D. Pa. 2010); *Nykiel v. Borough of Sharpsburg*, 2009 WL 1549535, *3-*4 (W.D. Pa. 2009).

To date, the Pennsylvania Supreme Court still has not ruled on this issue. Thus, the Court will follow its prior reasoning, as well as the reasoning of the other courts that have addressed the issue, and dismiss Plaintiff's claims for monetary damages under Article 1, § 8 of the Pennsylvania Constitution. Because the third amended complaint only seeks monetary damages, and does not seek any other form of equitable relief, s*ee Jones*, 890 A.2d at 1216 ("other remedies, such as declaratory or injunctive relief … are … remedies under the Pennsylvania Constitution"), the claim for alleged violations of the Pennsylvania Constitution, which is applicable to all of the Defendants, is dismissed. As allowing amendment of this claim would be futile, this claim is dismissed in its entirety with prejudice.

### 5. State Common Law Tort Claims

#### A. *Official Capacity*

Defendant Covert moves to dismiss the pendent state common law claims against him as they relate to his official capacity pursuant to the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S. § 8541, *et seq.* (Covert's Br. in Supp. at 12-13, ECF No. 58). The PSTCA provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. There are eight narrow exceptions to governmental immunity, all of which only apply to negligent acts of the local

agency or an employee of the agency acting within the scope of his or her official duties. *Id.* at §

8542.[10]  Criminal acts, actual fraud, actual malice and willful misconduct are not "negligent

acts." *Id.* at § 8542(a)(2).  "Intentional torts are 'willful misconduct' under section 8542(a)."

*Maloney v. City of Reading*, 2006 WL 305440, *5 (E.D.Pa. 2006) (citing *Pahle v. Colebrookdale

Twp.*, 227 F.Supp2d 361, 368 (E.D.Pa. 2002).

Here, Plaintiff does not assert a claim for false arrest against Defendant Covert.  (3rd.

Am. Compl. ¶ 26.a., ECF No. 55);(Pl.'s Resp. to Covert's Mot. at 5, ECF No. 69).  Additionally,

it is unclear whether Plaintiff is asserting the assault and battery claim against Defendant Covert.

(3rd Am. Compl. ¶ 26.c., ECF No. 55).  Assuming that he is, the state common law tort claims

against Defendant Covert are false imprisonment, assault and battery, and infliction of emotional

distress.  (*Id*. at ¶¶ 26.b.–d.).  Regarding his infliction of emotional distress claim, Plaintiff does

not specify whether he is asserting intentional or negligent infliction of emotional distress.  In

either instance, he cannot recover.  *See Means v. City of McKeesport*, 2012 WL 6552835, *8

(W.D.Pa. 2012), *adopted as Opinion of District Court*, 2012 WL 6554017 (W.D.Pa. 2012).

Moreover, the false imprisonment, and assault and battery allegations must be dismissed because

they are intentional torts under Pennsylvania law, and do not fall within any of the eight narrow

exceptions of the PSTCA.  *See* § 8542(b).  Therefore, all state common law tort claims against

Defendant Covert in his official capacity are appropriately dismissed with prejudice, as allowing

amendment would clearly be futile.

### B.  *Personal Capacity*

A public employee, however, is not immune in his or her personal capacity against claims

for intentional torts.  *See Walker v. North Wales Borough*, 395 F.Supp.2d 219, 231 (E.D.Pa.

---

[10]      The eight exceptions are: (1) vehicle liability; (2) care, custody or control of personal property;
(3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7)
sidewalks; and (8) care, custody or control of animals.  § 8542(b).

2005) (citing 42 Pa.C.S § 8550).[11]   To state a claim for false imprisonment in Pennsylvania, a plaintiff must sufficiently allege the following two elements: "(1) the detention of another person, and (2) the unlawfulness of such detention."   *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).   Defendant Covert challenges this claim by arguing that he was acting in accordance with facially valid court orders, his actions were not unlawful, and under Pennsylvania Rule of Criminal Procedure 150, it was not his responsibility to provide Plaintiff with any hearings.   (Covert's Br. in Supp. at 13-14, ECF No. 58).   The Court agrees with Defendant Covert.   As discussed above, the orders did not become invalid until Judge Motto's Order granting Plaintiff's petition for habeas corpus.   Defendant Covert's argument is entirely supported by Judge Motto's Order, which indicates that Defendant Covert acted appropriately under the circumstances.   Accordingly, Defendant Covert's detention of Plaintiff was not unlawful.

Next, to state a claim for intentional infliction of emotional distress, the following four elements must be established: "(1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe." *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997).   "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First Nat. Bank*, 531 A.2d 1122, 1125 (Pa. Super. 1988).   "Under Pennsylvania law, it is for the court to determine in the first instance whether defendant's conduct can be reasonably regarded as so extreme and outrageous to permit recovery." *Corbett v. Morgenstern*, 934 F.Supp. 680, 684 (E.D.Pa. 1996) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)).   The

---

[11]   Even if Plaintiff attempted to assert a claim for negligent infliction of emotional distress against Defendant Covert, it is inapplicable here because it does not fall within the categories of constituting a crime, actual fraud, actual malice or willful misconduct. *See* 42 Pa.C.S. § 8550.

Court agrees with Defendant Covert that "following a court's order to detain an individual … is neither extreme nor outrageous." (Covert's Br. in Supp. at 14, ECF No. 58). Therefore, this claim must be dismissed against Defendant Covert.

Finally, while it does not appear that the assault and battery claim pertains to Defendant Covert, the Court notes that Plaintiff stated in his response that aside from the false arrest claim, Defendant Covert is "guilty … of the State Violations charged to him by plaintiff in his [third amended] complaint." (Pl.'s Resp. to Covert's Mot. at 5, ECF No. 55). Therefore, in an abundance of caution, the Court will address this claim as it relates to Defendant Covert, as it appears that Plaintiff may have intended for it to apply to him.

"'Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence in an assault is actually done, though in ever so small a degree, upon the person.'" *Kokinda v. Breiner*, 557 F.Supp.2d 581, 594 (M.D.Pa. 2008) (quoting *Renk*, 641 A.2d at 293); *see also Field v. Philadelphia Elec. Co.*, 565 A.2d 1170, 1178 (Pa. Super. 1989) ("Battery requires intent to cause offensive contact and resultant harmful contact.") (citing Restatement (Second) of Torts § 13). Here, Plaintiff has alleged no facts indicating that Defendant Covert intended to cause a harmful contact or injury upon Plaintiff. Similarly, Plaintiff makes no allegations that Defendant Covert attempted to or actually touched or harmed him. Therefore, to the extent that Plaintiff wished to assert such a claim against Defendant Covert, it is dismissed.

The above claims against Defendant Covert in his individual capacity are dismissed with prejudice, as allowing amendment would indeed be futile.

### 6. Conclusion Regarding Defendant Covert

Based on the above, all of the claims against Defendant Covert, both under federal and state law, are dismissed with prejudice. Consequently, Defendant Covert's motion to dismiss is granted in its entirety.

**B.      City Of New Castle's Motion (ECF No. 62)**

1.  Remaining § 1983 Claims against the City

Defendant City of New Castle contends that the claims asserted against it under federal law should be dismissed because "Plaintiff has not identified any such policy in the [Third] Amended Complaint and has produced no evidence of such a policy." (ECF No. 41 at 2). The Court agrees.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978) (emphasis in original). Thus, in order for a plaintiff to prevail on a § 1983 claim against a municipality, he must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997); *see also Mulholland v. Gov't Cnty. of Berks, Pa*., 706 F.3d 227, 238 (3d Cir. 2013). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alterations in original). "A course of conduct is considered to be 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* (alterations in original). Knowledge and acquiescence are also grounds for establishing a custom. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

The policy alleged by Plaintiff through the factual allegations in the third amended complaint against the City of New Castle is essentially that its police officers arrested Plaintiff in connection with a detainer and took him to the Lawrence County Jail. Such a policy is not unconstitutional. Moreover, Plaintiff's position that the City is responsible for making sure that he received hearings in connection with the detainers and bench warrant is a legal conclusion, which the Court may disregard. *See Fowler*, 578 F.3d at 210. Judge Motto's Order makes clear that under Pa. R. Cr. P. 150, such a responsibility rested with the Delaware County officials. Further, regarding Plaintiff's allegation that the police department either "inadvertently or intentionally threw away" his house keys, Plaintiff likewise has failed to establish a custom or policy of such practices by the City. Additionally, Plaintiff has failed to show a causal link that loss of his keys created his alleged constitutional harm, i.e., being unlawfully detained for approximately two months.

Therefore, Plaintiff's only remaining federal claims against the City – the Fourth and Fourteenth Amendment claims – are appropriately dismissed. Because it is clear that based on Plaintiff's allegations allowing amendment would be futile, these claims are dismissed with prejudice.

### 2. State Law Claims against the City

The PSTCA bars all of the state common law claims asserted against the City of New Castle: false arrest, false imprisonment, assault and battery, and infliction of emotional distress (negligent or intentional). *See* 42 Pa.C.S. §§ 8541, 8542; Section IV.A.5., *supra*. In accordance with the above PSTCA analysis relating to Defendant Covert, the City, as a local governmental entity, is statutorily immune from such actions, as none of the claims fit within one of the eight narrow exceptions. *Id.*; *Means*, 2012 WL 6552835, at *8. Accordingly, these claims are

dismissed against the City with prejudice, as allowing Plaintiff to amend his complaint would be futile.

### 3. Conclusion Regarding the City

As a result, the third amended complaint fails to state any claims against the City. Therefore, all of claims asserted against the City of New Castle in the third amended complaint are dismissed in their entirety with prejudice, and the City's motion is granted.

### C.    Claims against the Unknown Officers of City of New Castle

The unknown officers of the City's police department have not yet been identified or made parties to this lawsuit, and thus, no motion has been filed on their behalf. Nonetheless, in accordance with the above analysis, the claims under the Thirteenth Amendment, *Bivens*, and the Pennsylvania Constitution for money damages are also appropriately dismissed as to the unknown officers. Additionally, because the unknown officers are averred to be employed by the City of New Castle, Plaintiff is unable to state a claim against them in their *official* capacities due to statutory immunity under the PSTCA.

The remaining federal Fourth and Fourteenth Amendment claims and pendent state common law claims asserted against them in their individual capacities are still viable, as there has been no motion to dismiss such claims on their behalf. As Plaintiff has requested in one of his briefs, he will be given the opportunity to discover the identities of these alleged unknown officers. *See* (Pl.'s Br. in Resp. to the City's Mot., ECF No. 68). If he is successful in doing so, he is advised that he must seek leave of Court to amend his complaint to add any of the unknown officers to the suit and must also properly serve them.[12] If, however, Plaintiff is unable to

---

[12]     The City of New Castle is no longer a party to this action. Thus, Plaintiff is advised that if he attempts to request information from the City, he must utilize the appropriate methods to obtain discovery from a non-party.

discern the identities of these unknown officers or properly add them as parties to this suit, these claims against the unknown officers will be dismissed at a later date.[13]

**D.      PBPP Defendants' Motion (ECF No. 65)**

1.  Remaining § 1983 Claims

Defendants Boozer, Hoerner, Rosetta, and the Commonwealth of Pennsylvania (collectively "PBPP Defendants") argue that the claims asserted by Plaintiff against them in their official capacities as representatives of the PBPP must be dismissed.  The Court agrees. As the PBPP Defendants point out, the PBPP and its employees acting in their official capacity are entitled to Eleventh Amendment immunity, and are not "persons" for purposes of § 1983. *McGarrey v. Pennsylvania D.O.C.*, 2007 WL 4248573, *2 (W.D. Pa. 2007) (citing *Ahmad v. Burke,* 436 F.Supp. 1307, 1311-12 (E.D. Pa. 1977); *London v. Pa. Bd. Of Prob. & Parole.*, 135 F.Supp.2d 612 (E.D. Pa. 2001); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-1 (1989)).  As a result, all of the federal claims against the PBPP Defendants with regard to acts committed in their official capacity are dismissed with prejudice because allowing amendment would be futile.   Additionally, all of the § 1983 claims against the Commonwealth of Pennsylvania are dismissed in their entirety.  *See* U.S. CONST. amend XI; 42 Pa.C.S. § 8521(b); *Will*, 491 U.S. at 71 (holding that a State is not a "person" under § 1983).

The Eleventh Amendment does not, however, bar claims for damages against state officials acting in their individual capacities.  *Laskaris v. Thorburgh*, 661 F.2d 23, 26 (3d Cir. 1981).  In order to state a § 1983 claim against state officials in their individual capacity, a "plaintiff must allege facts sufficient to raise a plausible inference that the defendants were personally involved in violating the plaintiff's constitutional rights."  *Butler v. Pa. Bd. of Prob.*

---

[13]      By separate Order, the Court will enter a Case Management Order setting forth the discovery deadlines in this case, including the deadline to identify the unknown officers.

*& Parole*, 2014 WL 1929537, *5 (E.D. Pa. 2014).  Consequently, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*"  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Id.*; *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Mearin v. Swartz*, 951 F.Supp.2d 776, 781 (W.D. Pa. 2013).

The PBPP Defendants do not challenge whether Plaintiff has sufficiently stated claims made against Defendant Boozer in his individual capacity, and thus, said claims against him will proceed.  They only assert that the claims alleged against Defendants Rosetta and Defendant Hoerner in their individual capacities should be dismissed.  In support of this argument, they contend that with respect to Defendant Rosetta, Plaintiff did "not specifically allege that [she] … was actually involved in, had actual knowledge of or gave acquiescence to the various events or circumstances alleged in his Complaint."  (PBPP Def.'s Br. in Supp. at 5, ECF No. 66).  They give no specific reasons as to why the claims should be dismissed against Defendant Hoerner.

The Court finds at this stage of the litigation, and in light of the liberal pleading standards afforded to *pro se* plaintiffs, Plaintiff has sufficiently alleged facts in the third amended complaint to raise a plausible inference that both Defendant Rosetta and Defendant Hoerner were personally involved in violating Plaintiff's constitutional rights.  With respect to Defendant Hoerner, Plaintiff averred that he was the supervisor of Defendant Boozer, was aware of and ignored Plaintiff's numerous complaints that he was being illegally held in prison, and "positively encouraged" Boozer to illegally hold Plaintiff.  (3rd Am. Compl. ¶ 21, ECF No. 55).  Regarding Defendant Rosetta, Plaintiff has alleged that she, as supervisor of both Hoerner and Boozer, was aware of "plaintiff's situation," but did nothing.  (*Id.* at ¶ 22).  Further, Plaintiff

claims that Defendant Rosetta had discussions with Hoerner and Boozer and approved their decisions while knowing of Plaintiff's deprivation "of his right to a hearing as provided for by Pennsylvania laws" and his "protestations" in connection therewith. (*Id.*). As a result, the PBPP Defendants have failed to carry their burden in establishing that Plaintiff's Fourth and Fourteenth Amendment claims against Defendants Boozer, Rosetta, and Hoerner in their individual capacities should be dismissed.

### 2. State Law Claims

The PBPP Defendants did not address or move to dismiss Plaintiff's state common law tort claims. Therefore, these claims in the third amended complaint against them will proceed.

### 3. Conclusion Regarding the PBPP Defendants

All § 1983 claims asserted against the PBPP Defendants in their official capacities are dismissed under the Eleventh Amendment. The remaining §1983 claims under the Fourth and Fourteenth Amendments against Defendants Boozer, Rosetta, and Hoerner will proceed. Additionally, all of the state common law torts claims against the PBPP Defendants will proceed.

### E.    Defendant Hibberd's Motion (ECF No. 67)[14]

### 1. Remaining § 1983 Claims

Defendant Hibberd asserts that with respect to the federal § 1983 claims, "[t]here can be no serious dispute that [she] is protected by qualified immunity." (Hibberd's Resp. at 9, ECF No. 67). She states that she could not "have possibly known" that what she "did or did not do in connection with Plaintiff was a constitutional violation" or that she violated a "clearly established" right of Plaintiff's. (*Id.* at 9-10). But this argument ignores a significant allegation asserted against her – that she signed a detainer knowing "that there was no basis for such order,

---

[14]      This document was filed as both Defendant Hibberd's motion and her brief in support thereof.

that plaintiff had committed no violation of any law and that [the] order was wrongful." (3rd Am. Compl. ¶ 23, ECF No. 55).

Assuming the veracity of this allegation alone, Defendant Hibberd is not entitled to qualified immunity on the remaining federal claims against her, the Fourth and Fourteenth Amendment Claims, because a reasonable officer in her position would have known not to intentionally detain an individual without cause, and that such a right was clearly established.[15] The Court finds that under the liberal pleading standards afforded to *pro se* plaintiffs, the third amended complaint sufficiently alleges that Defendant Hibberd intentionally caused an unlawful arrest in violation of the Fourth Amendment, and that the same allegations could be read to conclude that Hibberd's conduct also constituted deliberate indifference in violation of the Fourteenth Amendment. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843-844 (1998); *see also Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272 ("It is thus clear that § 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion.")'; *Duffy v. Cnty. of Bucks*, 7 F.Supp.2d 569, 579 ("[A] [probation] officer who knows an individual is innocent but 'intentionally' and 'with malice' causes others to arrest him can be liable for unconditional conduct" under substantive due process.).

The Court notes that Defendant Hibberd separately asserts as a basis for dismissal that Plaintiff incorrectly identified her as Deputy Director of the PBPP. (Hibberd's Resp. at 10). She states that she is instead employed with the Delaware County Adult Probation and Parole. (*Id.*). Although Defendant Hibberd points out this alleged discrepancy, she fails to articulate any valid

---

[15] The third amended complaint also avers that Defendant Hibberd failed to arrange appropriate hearings for Plaintiff and that she failed to train her employees. (3rd Am. Compl. ¶ 23, ECF No. 55). As the above allegation of intentionally and unlawfully facilitating Plaintiff's arrest is sufficient to overcome Defendant Hibberd's motion, and because she has not addressed any of these specific claims in her arguments, the Court need not address the same at this time.

reasoning as to why this constitutes grounds for dismissal. Plaintiff responds that this alleged "misclassification does not change [Defendant Hibberd's] role in the detention and incarceration of plaintiff in any way," and that it "does not diminish her culpability." (Pl.'s Resp. to Hibberd's Mot. at 3, ECF No. 71). The Court agrees with Plaintiff and notes that Defendant Hibberd's argument fails to recognize that it must take Plaintiff's allegations – not the Defendants' – as true at this point. She has not provided the Court with any means to take judicial notice of this issue, and therefore, her contention is rejected at this stage. Therefore, Plaintiff has adequately stated claims under the Fourth and Fourteenth Amendments against Defendant Hibberd in her personal capacity.

The Court notes, however, that in accordance with the above analysis regarding the PBPP Defendants, Plaintiff's allegation that she is an employee of the PBPP effectively establishes that she is entitled to Eleventh Amendment immunity as to all federal claims against her in her official capacity. *See* Section IV.D.1., *supra*. Likewise, if Plaintiff were permitted to amend the third amended complaint to reflect that Defendant Hibberd was rather an employee of the County, as she contends, the same result would occur. *Haybarger v. Lawrence Cnty. Adult Probation and Parole*, 551 F.3d 193, 197-198 (3d Cir. 2008) (noting that the Eleventh Amendment applies to subunits of the State, including County probation and parole departments) (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005); *Bronowicz v. Allegheny Cnty.*, Civ. No. 12-1023, 2013 WL 5724520, *16 (W.D.Pa. 2013) ("Indeed, caselaw has fully established that because Pennsylvania retained its Eleventh Amendment Immunity from § 1983 suits, see 42 Pa.C.S. §§ 8521-22, none of the named Defendants can be sued in their official capacities under § 1983."). Accordingly, these Fourth and Fourteenth Amendment

claims against Defendant Hibberd in her official capacity must be dismissed, but the claims against her in her individual capacity may proceed.

### 2. State Law Claims

Defendant Hibberd also argues that the pendent state common law tort claims against her in her official capacity should be dismissed pursuant to the PSTCA, 42 Pa.C.S. § 8541. (Hibberd's Mot. at 12-17, ECF No. 67). This argument is premised on Defendant Hibberd's assertion that the factual contentions in the third amended complaint are inaccurate, and that she is actually employed by the County, and not the State. (*Id.*). But as noted above, the Court must accept Plaintiff's factual allegations as true, and Defendant Hibberd has provided the Court with no legitimate means to take judicial notice of this discrepancy.

Notably, Defendant Hibberd has not alternatively argued that Pennsylvania's Sovereign Immunity statute, 42 Pa.C.S. § 8521 *et seq.*, applies to these claims, and apparently assumed that the Court would disregard Plaintiff's plain allegations. However, the Court cannot do this and is bound by the appropriate standard of review. Therefore, at this stage, local governmental immunity is inapplicable to this analysis. Consequently, her contention that the claim for punitive damages must be dismissed under the PSTCA is also inapplicable at this time.

Regarding these claims as to Defendant Hibberd's personal capacity, she states in her motion that the claims should be dismissed, but does not provide any citations to law or arguments supporting dismissal in her brief as to these claims, except for the claim relating to false imprisonment.[16] *See* (Hibberd's Mot. ¶¶ 15-17 and Br. in Supp. at 16-17, ECF No. 67).

---

[16] Defendant Hibberd asserts that the false imprisonment claim does not specifically apply to her. (Hibberd's Br. in Supp at 16-17, ECF No. 67). The Court disagrees. The allegation specifically faults the "deputy director of the [PBPP]" that "gave the order to detain and commit plaintiff to jail even though plaintiff had not violated any rules or laws." (3rd Am. Compl. ¶ 26.c., ECF No. 55). Although the allegation names David M Styles as this person, when Plaintiff amended the second amended complaint, he replaced the allegations against Styles with allegations against Hibberd, who is alleged in the caption

Because Defendant Hibberd has not adequately briefed these issues and has also failed to establish that the PSTCA bars the official capacity claims, the Court will, in the interests of judicial economy, deny her motion as it relates to the personal capacity claims as well. This decision is bolstered by the fact that she is remaining as a party in the case in connection with Plaintiff's federal individual capacity claims under the Fourth and Fourteenth Amendments.

The parties will of course have the opportunity in discovery to establish the operative facts of the case, and once the facts are undisputed, Defendant Hibberd will be free to reassert and brief her position at the later appropriate time.

### 3. Conclusion Regarding Defendant Hibberd

All § 1983 claims asserted against Defendant Hibberd in her official capacity are dismissed pursuant to the Eleventh Amendment. The remaining § 1983 claims under the Fourth and Fourteenth Amendments against her in her individual capacity will proceed. Additionally, the pendent state common law tort claims against Defendant Hibberd will proceed.

### F. Futility of Amendment

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.*

Given that the Court has already provided Plaintiff with three opportunities to amend, (ECF Nos. 26, 35, 55), the Court is not required to provide him with further leave to amend as further amendment would be futile. *Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012).

---

and in the body to be the deputy director of the PBPP. (*Id.* at ¶¶ 9, 23). Therefore, a liberal reading of this pleading results in a finding that the false imprisonment claim is asserted against Hibberd. Moreover, Hibberd's assertion that "[t]here is nothing in the Third Amended Complaint to establish that [she] ever 'intended' for Plaintiff to be imprisoned" is in direct contravention of the allegations against her.

## V. CONCLUSION

Based on the foregoing, the Thirteenth Amendment claims, the *Bivens* claims, and the claims for money damages under the Pennsylvania Constitution contained in the third amended complaint will be dismissed in their entirety with prejudice as to all Defendants.  Additionally, to the extent that Plaintiff attempted to claim a violation of the Due Process Clause of the Fifth Amendment, that claim is dismissed against all of the Defendants.  *See supra,* note 7.

Further, all remaining federal and state claims are dismissed with prejudice as to Defendant Covert and the City of New Castle.  Therefore, the motions filed by Defendant Covert (ECF No. 57) and the City of New Castle (ECF No. 62) will be granted, and they will be terminated as parties from this lawsuit.

The remaining Fourth and Fourteenth Amendment claims against the Unknown Officers of the City of New Castle Police Department, the PBPP Defendants, and Defendant Hibberd in their official capacities are dismissed with prejudice, but said claims against them in their individual capacities shall proceed.  Additionally, the state common law tort claims against the Unknown Officers in their official capacities are dismissed, while said claims asserted against them in their individual capacities shall proceed.  The state common law tort claims against the PBPP Defendants and Defendant Hibberd shall proceed.  Accordingly, the motions filed by the PBPP Defendants (ECF No. 65) and Defendant Hibberd (ECF No. 67) are granted in part and denied in part.

An appropriate Order follows.

March 13, 2015

By the Court:

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge

cc:     PHILBERT WILSON
        124 N. Mulberry Street
        New Castle, PA 16101

        All registered counsel via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILBERT WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1529 |
| | ) | |
| STATE OF PENNSYLVANIA, et. al., | ) | United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| Defendants. | ) | |

**ORDER**

**AND NOW**, this 13th day of March, 2015, in accordance with the foregoing Memorandum Opinion, the Court enters the following:

**IT IS HEREBY ORDERED THAT** Defendant Brian Covert's Motion to Dismiss (ECF No. 57) is **GRANTED** and that all claims against Defendant Covert are dismissed with prejudice.

**IT IS FURTHER ORDERED THAT** Defendant City of New Castle Police Department's Motion to Dismiss (ECF No. 62) is **GRANTED** and that all claims against the City are dismissed with prejudice.

**IT IS FURTHER ORDERED THAT** the Motion to Dismiss filed by Defendants Jeffrey Boozer, Denis Hoerner, Mary Rosetta, and State of Pennsylvania (ECF No. 65) is **GRANTED IN PART AND DENIED IN PART**. The claims under the Fifth Amendment, Thirteenth Amendment, *Bivens*, and the Pennsylvania Constitution are dismissed with prejudice. Additionally, the remaining federal claims under the Fourth and Fourteenth Amendments are dismissed as to the Defendants' official capacities, but shall proceed as to their individual capacities. The pendent state common law tort claims shall proceed as well.

**IT IS FURTHER ORDERED THAT** Defendant Danielle Hibberd's Motion to Dismiss (ECF No. 67) is **GRANTED IN PART AND DENIED IN PART**. The claims under the Fifth Amendment, Thirteenth Amendment, *Bivens*, and the Pennsylvania Constitution are dismissed with prejudice. Additionally, the remaining federal claims under the Fourth and Fourteenth Amendments are dismissed as to Defendant Hibberd's official capacity, but shall proceed as to her individual capacity. The pendent state common law tort claims shall proceed as well.

**IT IS FURTHER ORDERED THAT** the claims against the Unknown Officers of the City of New Castle Police Department under Fifth Amendment, Thirteenth Amendment, *Bivens*, and the Pennsylvania Constitution are dismissed with prejudice. Additionally, the pendent state common law tort claims against the Unknown Officers in their official capacities are dismissed. Plaintiff will have an opportunity to discover the identities of the Unknown Officers to pursue the remaining claims against them – the Fourth and Fourteenth Amendment claims and the pendent state common law tort claims against the officers in their individual capacities.

By the Court:

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge

cc:    PHILBERT WILSON
       124 N. Mulberry Street
       New Castle, PA 16101

       all registered counsel via CM-ECF