IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILBERT WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-1529 |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS HOERNER, Probation Officer Supervisor, JEFFREY BOOZER, Probation Officer, MARY ROSETTA, Case Manager for Probation and Parole, JEFFREY RONEY, BRYAN SNYDER, DELAWARE COUNTY, LAWRENCE COUNTY, | ) ) ) ) ) ) ) ) | United States Magistrate Judge Cynthia Reed Eddy |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION[1]

**Cynthia Reed Eddy, United States Magistrate Judge**

This is a civil rights action initiated pursuant to 42 U.S.C. § 1983 alleging that the above-captioned Defendants violated Plaintiff Philbert Wilson's civil rights when he was detained for sixty-four days in the Lawrence County Jail without ever receiving the applicable revocation hearings to which state probationers are entitled. Pending before the Court is Defendant Jeffrey Roney's motion to dismiss Plaintiff's fourth amended complaint for failure to state a claim. (ECF No. 119 *errata* 121).[2] For the reasons that follow, Roney's motion will be denied.

**I. Factual Background**

The following factual allegations are taken from the fourth amended complaint (ECF No.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have voluntarily consented to have the undersigned conduct any and all proceedings herein, including the authority to enter final judgment, with direct review by the United States Court of Appeals for the Third Circuit. (ECF Nos. 19, 21, 108, 116, 117).

[2] The other motions to dismiss filed by Defendants in response to the fourth amended complaint (ECF Nos. 125, 129) will be addressed by the Court in separate opinions.

100), the operative pleading herein.

In April 2001, Plaintiff was convicted in the Delaware County Court of Common Pleas following a jury trial. Approximately eight years later, Plaintiff began serving a 72-month term of state-supervised probation. On May 12, 2013, while still on probation, the Pennsylvania Board of Probation and Parole ("PBPP") issued a 48-hour detainer directing officers from the City of New Castle Police Department to seize, arrest, and transport Plaintiff to the Lawrence County Jail based on technical violations.[3] During this arrest, Plaintiff was allegedly informed by the arresting officers that he was not being charged with any crimes and was advised by the jail's warden that he was being held in accord with orders from the PBPP. The next day, May 13, 2013, the Delaware County Special Probation division of the PBPP issued a second detainer against Plaintiff. This second detainer did not have an expiration date.

On May 14, 2013, a Technical Violation Arrest Report was prepared by the PBPP. It was signed by Plaintiff's Parole Agent, Defendant Jeffrey Boozer, and Boozer's supervisor, Dennis Hoerner. Hoerner recommended in this report that Plaintiff be detained pending disposition of the technical violations. On May 16, 2013, Boozer sent a Request for Court Detainer to Judge Hazel of the Delaware Court of Common Pleas, recommending that Plaintiff be held in confinement pending disposition of technical violations. This request was also signed by Hoerner in his capacity as Boozer's supervisor. That same day, a bench warrant was signed by a "back-up" judge of that same court, which provided that Lawrence County Jail's warden, Brian Covert, was commanded to take Plaintiff into custody based on violation of probation/parole as reported by Boozer.

Although Rule 150(A)(5)(b) of the Pennsylvania Rules of Criminal Procedure requires

---

[3] The technical violations included leaving the district without permission, violating curfew, and possessing drug paraphernalia.

that a hearing be held within 72 hours of the execution of a bench warrant, Plaintiff did not receive any such hearing. Plaintiff also did not receive a preliminary hearing within 14 days of his detention on the Board warrant as set forth in 37 Pa. Code § 71.2(3).

After more than two weeks of being detained in the Lawrence County Jail without ever receiving a hearing, Plaintiff was informed by Boozer on May 29, 2013 that Delaware County would be scheduling a *Gagnon* hearing[4] for Plaintiff. That same day, Plaintiff received a Notice of Charges and Hearing form from PBPP stating that "this notice is in reference to your upcoming: GAGNON I HEARING." However, no *Gagnon I* hearing was ever scheduled or held, and Plaintiff remained detained in the Lawrence County Jail for another month and a half.

Relevant here, Plaintiff alleges that Defendant Roney, the movant, had first-hand knowledge of Plaintiff's continued incarceration without a hearing. Roney is a supervisor with the Delaware County Adult Probation and Parole ("DCAPP"). Plaintiff alleges that Roney was informed via e-mail by PBPP Defendants Boozer and Hoerner that Plaintiff was being detained without a *Gagnon* hearing, but Roney failed to schedule Plaintiff's transport to Delaware County and/or his *Gagnon* hearing. Plaintiff has attached these e-mail communications to the fourth amended complaint. When drawing all reasonable inferences in a light most favorable to Plaintiff at this stage, said e-mails suggest that Roney was an individual responsible for

---

[4] As explained by our Court of Appeals:

> In *Gagnon v. Scarpelli*, the Supreme Court held that a person accused of violating the terms of his probation was entitled to two hearings before revocation and re-sentencing. See Gagnon v. Scarpelli, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The first, a *Gagnon I* hearing, serves to determine whether there was probable cause for the probation revocation. Gagnon, 411 U.S. at 782. The second, a *Gagnon II* hearing, determines whether the person in fact violated the conditions of his or her probation and whether s/he should be incarcerated. Commonwealth v. Sims, 770 A.2d 346, 349 (Pa.Super.Ct.2001) (citing Gagnon, 411 U.S. at 784).

Heilman v. T.W. Poness And Assoc., 2009 WL 82707, *1 n. 1 (3d. Cir. 2009).

3

arranging for Plaintiff's transfer from Lawrence County to Delaware County and/or scheduling the hearing.

About six weeks after Plaintiff was initially detained, on June 25, 2013, Plaintiff filed a petition for writ of habeas corpus in the Court of Common Pleas of Lawrence County. A hearing was held on this petition by President Judge Dominick Motto on July 15, 2013. At the hearing, Judge Motto noted that Plaintiff had not received *Gagnon* hearings and determined that Plaintiff's continued detention in the Lawrence County Jail was unlawful under Pa. R. Crim. P. 150. Consequently, Judge Motto ordered that the warden immediately release Plaintiff.

## II.   Procedural History

The procedural history of this case is long and convoluted. Plaintiff commenced this action while acting *pro se* on October 21, 2013 by filing a motion for leave to proceed *in forma pauperis*, and his original complaint (ECF No. 3) was filed on November 1, 2013. The original complaint named as Defendants the Commonwealth of Pennsylvania, multiple officers of the PBPP, and the warden of the Lawrence County Jail. These Defendants responded to the complaint by filing two motions to dismiss. After Plaintiff was granted multiple extensions of time to respond to the motions to dismiss, Plaintiff filed a motion for leave to file an amended complaint, which the Court granted on February 6, 2014, resulting in the two motions to dismiss being denied as moot.

The amended complaint (ECF No. 26) added the City of New Castle Police Department and Unknown New Castle police officers as Defendants. Defendants responded by filing three motions to dismiss. On April 1, 2014, the Court granted Plaintiff's request to file a second amended complaint, again resulting in the pending motions to dismiss being denied as moot. The second amended complaint (ECF No. 35) named three additional PBPP Defendants. The

4

Defendants reasserted their motions to dismiss, which were again subsequently denied as moot when the Court granted Plaintiff's request to file a third amended complaint on November 25, 2014. The third amended complaint (ECF No. 55) added Danielle Hibberd, a Deputy Director of the DCAPP, as a Defendant.[5] Defendants responded by filing four motions to dismiss.

On March 13, 2015, the Court entered a Memorandum Opinion and Order (ECF No. 73) in which it dismissed several of the claims against all of the Defendants and dismissed the warden and the City of New Castle entirely from the action.[6] Plaintiff's Fourth and Fourteenth Amendment claims against the unknown police officers, PBPP Defendants and Hibberd in their official capacities were dismissed but said claims against them in their individual capacities survived. The Court held a case management conference with the parties on April 8, 2015. Discovery was scheduled to close on September 8, 2015 and motions for summary judgment were due shortly thereafter. The case was referred to a pro bono mediation session and the Court appointed Plaintiff counsel solely for the limited purpose of the ADR session. Thereafter, on August 18, 2015, several notices of appearance were filed on behalf of Plaintiff, and the Court extended fact discovery and the summary judgment briefing schedule. The parties filed a stipulation of dismissal as to Defendant Hibberd on September 29, 2015, which the Court approved on October 7, 2015.

In November 2015, the Court extended the discovery and summary judgment periods

---

[5] Hibberd was incorrectly identified in the third amended complaint as an employee of the PBPP.

[6] In particular, the Court dismissed the following claims in the third amended complaint as to all of the Defendants: Fifth Amendment claim, Thirteenth Amendment claim, *Bivens* claim, and a claim for damages under Article 1, § 8 of the Pennsylvania Constitution. The Court dismissed the remaining federal claims against the warden based on absolute immunity; dismissed the state law claims against him in his official capacity based on immunity pursuant to Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, *et seq.* ("PTSCA"); and dismissed the state law claims against him in his personal capacity for failure to state a claim. The Court dismissed the remaining federal claims against the City of New Castle for Plaintiff's failure to state a *Monell* claim, and dismissed the state law claims based on immunity under the PSTCA.

again, and on February 5, 2016, on the last day of discovery, Plaintiff filed a motion for leave to file a fourth amended complaint to add new parties, which the Court granted on February 8, 2016. The fourth amended complaint (ECF No. 100) added several new Defendants, including Defendant Roney, and resulted in the filing of three motions to dismiss.[7] Accordingly, the summary judgment briefing schedule has been stayed by the Court.

In his motion, Roney argues that the fourth amended complaint, as it relates to Roney, should be dismissed because it was filed after the expiration of the statute of limitations; it does not allege the requisite level of personal involvement under § 1983; he cannot be found liable because he is not an employee of Delaware County or the PBPP; and he is entitled to qualified immunity. Plaintiff has responded to each of these arguments. The Court will address each argument *seriatim*.

### III. Discussion[8]

#### A. Statute of Limitations and Relation Back Doctrine

The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose, which in Pennsylvania is two-years. Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (citing Wallace v. Kato, 549 U.S. 384, 387

---

[7] It also added Lawrence County, Delaware County, and Sergeant Bryan Snyder of the Delaware County Sheriff's Office. As stated above at note 2, these Defendants have filed separate motions to dismiss which are currently pending before the Court and which will be addressed by separate opinions.

[8] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under this standard, the well-pled facts are accepted as true and all reasonable inferences are drawn in a light most favorable to the nonmoving party. Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Additionally, although a limitations defense is an affirmative defense, Fed. R. Civ. P. 8(c)(1), which a defendant must normally plead and prove, Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002), a defendant may file a motion under Rule 12(b)(6) if it is apparent on the face of the complaint that the cause of action has not been brought within the statute of limitations, Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

(2007) and 42 Pa. Cons. Stat. § 5524(2)). The accrual date, however, is governed by federal law. Wallace, 549 U.S. at 388. "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'" Kach, 589 F.3d at 634 (quoting Sameric Corp. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998)). Roney contends, and Plaintiff does not dispute, that the accrual date in this case is, at the very latest, July 15, 2013, the date that Judge Motto ordered that Plaintiff be released from the Lawrence County Jail. Therefore, applying the applicable two-year statute of limitations, the statute of limitations expired on July 15, 2015.

As set forth above, while acting *pro se*, Plaintiff filed the original complaint, as well as three amended complaints, within this time period. However, the fourth amended complaint, which was submitted on behalf of Plaintiff after he retained counsel, was filed on February 9, 2016, approximately seven months after the statute of limitations expired. Because Roney was not added as a party to this lawsuit until Plaintiff filed the fourth amended complaint, he asserts that it is apparent on the face of that pleading that the claims against him therein are barred by the statute of limitations. In response, Plaintiff counters that we should apply the relation back doctrine under Rule 15(c) of the Federal Rules of Civil Procedure.

Under Rule 15(c), an amendment of a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> 
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
> 
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

7

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). "If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003) (citing Singletary v. Pa. D.O.C., 266 F.3d 186, 189 (3d Cir. 2001)).

In order for relation back to apply to a party that was added after the statute of limitations expired, a plaintiff must show that: (1) the claim or defense set forth in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading; (2) within the time period provided in Rule 4(m),[9] the party or parties to be added received such notice of the action and would not be prejudiced in maintaining a defense;[10] and (3) the party sought to be added knew that, but for a mistake concerning his or her identity, he or she would have been made a party to the action. Garvin, 354 F.3d at 222 (citing Singletary, 266 F.3d at 194). As Roney only challenges whether the notice requirement of the second condition is satisfied, we will limit our discussion to that issue.[11]

---

[9] The Court notes that effective December 1, 2015, the time period provided in Rule 4(m) was reduced from 120 days to 90 days. This rule change is inapplicable to this case, however, because all of the earlier pleadings were filed before this rule went into effect.

[10] Rule 15(c)(1)(C)(i) was amended in 2007 "as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed R. Civ. P. 15 Advisory Committee Notes to 2007 Amendment. "Former Rule 15(C)(3)(A) called for notice of the 'institution' of the action," however, the current version "omits the reference to 'institution' as potentially confusing" because "[w]hat counts is that the party to be brought in have notice of the existence of the action whether or not the notice includes details as to its 'institution.'" Id. In accord with this restyled rule change, this Court has omitted *Garvin's* reference to the requirement that the party to be added must have received notice of the "institution" of the action.

[11] Nevertheless, in his brief, Plaintiff more than sufficiently demonstrated that the first and third conditions of relation back are satisfied. Additionally, Roney does not challenge whether Plaintiff has

8

"Though not expressly stated, it is well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" Glover v. F.D.I.C., 698 F.3d 139, 145-46 (3d Cir. 2012) (citations omitted). Actual notice or service of process is not necessary. Singletary, 266 F.3d at 195. Our Court of Appeals has recognized two methods of imputing constructive notice on a new party: (1) the shared attorney method, and (2) the identity of interest method. Id.; Garvin, 345 F.3d at 222-23. Plaintiff argues that he has satisfied both of these methods.

The shared attorney method "is based on the notion that when the originally named party and the parties sought to be added are represented by the same attorney, 'the attorney is likely to have communicated to the latter party that he may very well be joined in the action.'" Garvin, 354 F.3d at 222-23. "The relevant inquiry under this method is whether notice of the … action can be imputed to [Roney] within the relevant 120 day period … by virtue of representation [Roney] shared with a defendant originally named in the lawsuit." Singletary, 266 F.3d at 196. The "identity of interest" method, which is closely related to the shared attorney method, "generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." Id. at 197 (quoting 6A Charles A. Wright et al., *Federal Practice And Procedure* § 1499, at 146 (2d ed. 1990)). Under the identity of interest method, "a non-management employee … does not [generally] share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to employee for Rule 15(c)[(1)(C)(i)]

---

satisfied the second subpart of the second condition – the absence of prejudice – which is "closely intertwined" with notice. See Singletary, 266 F.3d at 194 n. 3 ("[O]nce it is established that the newly named defendant received some sort of notice within the relevant time period, the issue becomes whether the notice was sufficient to allay any prejudice the defendant might have suffered by not being named in the original complaint.").

9

purposes," id. at 199, although courts within the Third Circuit have concluded that notice can be imputed to the new defendant under this method if he occupied a similar supervisory role as the previous named defendant. See Ammouri v. AdapptHouse, Inc., 2208 WL 2405762, * 5 & n. 11 (E.D. Pa. 2008); Montanez v. York City, Pa., 2014 WL 671433, *6 (M.D. Pa. 2014); Ward v. Taylor, 250 F.R.D. 165, 169 (D. Del. 2008).

Plaintiff contends that Roney had notice of this action within 120 days from the date that the third amended complaint was filed. The third amended complaint, which was timely filed within the limitations period on November 25, 2014 when Plaintiff was still acting *pro se*, named Danielle Hibberd as a Defendant. Hibberd is the Deputy Director of the DCAPP and was represented by Attorney Jason Bates of the law firm Holsten & Associates as early as January 2, 2015. (ECF No. 60). The relevant 120 day time period expired on March 30, 2015. Within this time period, on January 30, 2015, Attorney Bates filed a motion to dismiss on behalf of Hibberd, (ECF No. 67), which the Court subsequently denied on March 13, 2015. (ECF No. 73).[12] After Plaintiff retained counsel, Hibberd was voluntarily dismissed from this action by stipulation of the parties on September 29, 2015, which the Court approved on October 7, 2015. (ECF Nos. 93, 94). Roney was added to this action via the fourth amended complaint on February 9, 2016, and like Hibberd, is alleged to be a supervisor within the DCAPP. (4th Am. Compl. at ¶ 15, ECF No. 100). Roney is also represented by a member of the law firm Holsten and Associates: Attorney Suzanne McDonough.

Plaintiff asserts that notice can be imputed to Roney through the shared attorney method because Attorney Bates, as a member of the same law firm that presently represents Roney, had an opportunity to investigate Plaintiff's claims within the relevant 120 day time period when he

---

[12] The Court notes that in the separate pending motion to dismiss filed by Delaware County and Snyder, they assert that Attorney Bates is no longer a member of Holsten & Associates. Nevertheless, during the relevant 120 day time period, he was.

was preparing Hibberd's motion to dismiss and was likely to have communicated to Roney that Roney may very well be joined in this action, especially considering Roney's alleged knowledge and personal involvement in this case, as suggested by the attached e-mails. (ECF No. 127 at 6). Although Roney counters that "[s]imply having an attorney from the same office later represent the newly sued Defendant is insufficient," (ECF No. 134 at 2), other courts have found that the shared attorney method applies when different attorneys of the same law firm represent both the original and new defendants. See Browning v. Safmarine, Inc., 287 F.R.D. 288, 291 (D.N.J. 2012) (shared attorney method applicable based on the law firm's representation of the original and new defendants); Davis v. Corr. Med. Sys., 480 F.Supp.2d 754, 761 (D. Del. 2007) ("[T]he complaint on its face supports the inference that any investigation of the case by the shared attorneys (both with the same law firm) would have placed [the new defendants] on notice of … the action."). Here, the Court notes that it appears that Holsten and Associates routinely represents Delaware County, the DCAPP, the Delaware County Sheriff's Department, and their employees.[13] Thus, the Court agrees with Plaintiff that it is likely that when Attorney Bates was representing Hibberd and investigating the claims against her prior to March 30, 2015, he quickly would have discovered that Hibberd was not involved in the third amended complaint's allegations but that Roney was, and that Attorney Bates was likely to have communicated to Roney that he may joined in the action.

    Plaintiff similarly argues that that the identity of interest method is satisfied in light of the

---

[13] See, e.g., Beaver v. Delaware Cty. Prob. & Parole, 2016 WL 4366977 (E.D. Pa. 2016) (Attorney McDonough representing the DCAPP and its employees); T.R. v. Havens, 612 Fed. App'x 83 (3d Cir. 2015) (Attorney McDonough representing Delaware County and Attorney Raith representing an attorney appointed by the Delaware County Court of Common Pleas); Nelson v. Comm. of Pa., 2013 WL 12091670 (E.D. Pa. 2013) (Holsten and Associates representing the Commonwealth of Pennsylvania and Delaware County); Marvel v. Delaware Cty., 2009 WL 1544928 (E.D. Pa. 2009) (Attorney Raith representing Delaware County, and both the director and supervisor of the Delaware County Court-ordered Community Service Department); Deorio v. Delaware Cty., 2009 WL 2245067 (E.D. Pa. 2009) (Holsten and Associates representing Delaware County and the Delaware County Sheriff's Department).

fact that Roney and Hibberd both hold supervisory roles within the DCAPP, as well as Roney's purported involvement in this matter. (ECF No. 127 at 6). Thus, Plaintiff contends that a sufficient nexus of interest exists between them to impute notice to Roney. Roney responds by arguing that "[s]haring an office is insufficient" to impute notice. (ECF No. 134 at 2). However, the cases in this Circuit holding that sharing an office is insufficient are plainly distinguishable, as they do not involve supervisory employees and were simply applying the general rule set forth in *Singletary* that the identity of interest method does not apply to non-management employees absent other circumstances. See Brown v. McElwee, 2013 WL 5948026, *6 (E.D. Pa. 2013) (identity of interest method not applicable to police officers who shared an office on the night of the incident); Martin v. City of Reading, 2015 WL 390611, *8 (E.D. Pa. 2015) (declining to impute notice to police officers because they are non-managerial); Shiloh v. Hassinger, 2015 WL 4404870, *3 (M.D. Pa. 2015). Because Hibberd and Roney are alleged to be supervisory employees within the DCAPP, the Court finds that when drawing all reasonable inferences in a light most favorable to Plaintiff, Plaintiff has demonstrated a sufficient nexus between Hibberd and Roney such that we may infer that Roney received notice of this action when the third amended complaint added Hibberd as a Defendant, especially when considering Roney's alleged involvement in this incident. See Smith v. City of Phila, 363 F.Supp.2d 795, 801-02 (E.D. Pa. 2005).

Accordingly, as notice was the only portion of Rule 15(c) that Roney asserted was missing, Plaintiff has established that the fourth amended complaint and its claims therein asserted against Roney relate back to the earlier timely filed third amended complaint. Roney's motion to dismiss on statute of limitations grounds is therefore denied.

    **B.**    **Section 1983 - Personal Involvement**

Roney also asserts that the claims against him in the fourth amended complaint are deficient on the merits. To state a viable § 1983 claim, the plaintiff must sufficiently plead that (1) the conduct complained of was committed by a person acting under the color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Twp of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). To that end, a defendant in a civil rights action must have personal involvement in the alleged wrongs. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law." Schmidt v. Creedon, 639 F.3d 587, 595 (3d Cir. 2011) (citation and internal marks omitted).

In *Gagnon v. Scarpelli*, the Supreme Court held that "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing." 411 U.S. 778, 782 (1973). Plaintiff asserts that Defendants, including Roney, deprived him of his constitutional right to receive the preliminary *Gagnon I* hearing while he was being held for more than two months in the Lawrence County Jail. "At the preliminary [*Gagnon I*] hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence on his own behalf, a conditional right to confront adverse witnesses, an independent decision maker, and a written report of the hearing." Id. at 786 (citing Morrissey v. Brewer, 408 U.S. 471, 478 (1972)).

Roney does not dispute that Plaintiff was entitled to a *Gagnon I* hearing during his detention in the Lawrence County Jail. He rather contends that he was not personally involved

13

in the failure to arrange for Plaintiff's transportation to Delaware County or to schedule the hearing. According to Roney, Plaintiff's only allegation of personal involvement against him "is that on May 29, 2013, a PBPP Defendant asked Roney about the process of getting the Plaintiff back to Delaware County to which Roney replied and provided the requested information as to who PBPP should contact." (ECF No. 122 at 6-7). Further, Roney asserts that he was neither authorized nor obligated to supervise Plaintiff, who is state probationer, because that authority rests exclusively with the PBPP. See 61 P.S. 331.17a(a). Similarly, Roney claims that he is not responsible for any error committed by Delaware County, the Delaware County Sheriff's Department, or their employees in failing to arrange a *Gagnon I* hearing because he is not a Delaware County employee. Instead, as a supervisor for the DCAPP, he asserts that he is a Commonwealth employee as a matter of law. See Haybarger v. Lawrence County Adult Prob. & Parole, 551 F.3d 193, 198 (3d Cir. 2008) ("The Commonwealth vests judicial power in a unified judicial system, PA. CONST. art. V, § 1, and all courts and agencies of the UJS [including the County Probation and Parole departments] are part of the Commonwealth government rather than local entities."). Therefore, Roney claims that because he is neither a PBPP employee nor a Delaware County employee, he cannot be liable for failing to provide a *Gagnon I* hearing to Plaintiff.

In response, Plaintiff disputes that Roney's only involvement in this matter was receiving and sending one e-mail. Indeed, there are multiple e-mail chains between Roney and the PBPP Defendants attached to the fourth amended complaint that go back as early as May 16, 2013 and that continued until after Plaintiff was released. A cursory reading of these e-mail chains raises a reasonable expectation that discovery will uncover proof that Roney was in fact personally responsible and involved in the alleged constitutional deprivation, i.e., failure provide Plaintiff

14

with a *Gagnon I* hearing, regardless of whether Roney is technically an employee of the Commonwealth instead of the County.[14] Therefore, Roney's motion to dismiss for lack of personal involvement is denied.[15]

## C. Qualified Immunity

Roney also contends that he is entitled to qualified immunity. Under a qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "[T]o overcome the assertion of qualified immunity at the motion to dismiss stage, a plaintiff must sufficiently plead not only a violation of a constitutional or statutory right, but also a violation of a clearly established one." Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012). As set forth above, Plaintiff has pled that Roney's alleged conduct plausibly violated Plaintiff's clearly established constitutional right; that is, the

---

[14] At this stage, the Court rejects Roney's argument that he cannot be liable under § 1983 because he is not an employee of the PBPP or the County. The cases relied upon by Roney in support of this argument were all in the context of Eleventh Amendment immunity or sovereign immunity under Pennsylvania law. See, e.g., Spiker v. Allegheny Cty. Bd. of Prob. & Parole, 920 F.Supp.2d 580, 610 (W.D. Pa. 2013); Benn v. First Judicial Dist. of Pa., 426 F.3d 233 (3d Cir. 2005); Haybarger, 551 F.3d at 198. However, neither type of immunity operates as a bar to § 1983 actions against a state official defendant sued in his individual (personal) capacity. See Hafer v. Melo, 502 U.S. 21, 31 (1991) ("[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."); Jones v. Hashagen, 512 Fed. App'x 179, 182 (3d Cir. 2013) (Sovereign "immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is to be imposed."). As such, because it appears from the allegations in the fourth amended complaint that Roney was responsible for arranging and/or scheduling the *Gagnon I* hearing, which he did not do, and because it also appears that he was acting under color of state law at all relevant times herein, this is not an adequate basis for dismissal. To the extent that discovery reveals that he was not responsible, we can revisit this issue at a later date.

[15] The Court notes that Plaintiff does not oppose Roney's other argument that the Fourth Amendment claim should be dismissed because Plaintiff only complains of failing to receive *Gagnon* hearings – a Fourteenth Amendment issue – and does not otherwise complain of his arrest or detention, which would implicate the Fourth Amendment.

right of a probationer to receive a preliminary hearing as set forth in *Gagnon*. Although Roney argues that the fourth amended complaint contains insufficient allegations of his personal involvement or responsibility in this incident, the Court disagrees.

Contrary to Roney's position, Plaintiff is not claiming that Roney's mere receipt of a single e-mail obligated him to schedule the hearing for Plaintiff. Rather, at this stage, the content of these e-mails suggests that Roney was plausibly responsible for failing to arrange or schedule a *Gagnon* hearings for Plaintiff, which is a clearly established constitutional right. Until the factual record is developed, the Court cannot conclude that Roney is entitled to qualified immunity. At the pleading stage, however, when accepting the well-pled facts as true and drawing all reasonable inferences in a light most favorable to Plaintiff, the fourth amended complaint contains sufficient allegations to withstand Roney's motion to dismiss. See Zion v. Nassan, 727 F.Supp.2d 388, 402 (W.D. Pa. 2010) (concluding that the defendants were not entitled to qualified immunity at the motion to dismiss stage in light of the factual inferences that must be drawn in favor of the plaintiff, which when accepted as true, state a plausible violation of a clearly established right).

**IV.     Conclusion**

In accordance with the foregoing, Defendant Roney's motion to dismiss (ECF No. 119 *errata* 121) is denied. An appropriate Order follows.


Dated: September 30, 2016.                                          By the Court:

                                                                    s/ Cynthia Reed Eddy
                                                                    Cynthia Reed Eddy
                                                                    United States Magistrate Judge

cc: all registered counsel via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| PHILBERT WILSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-1529 |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS HOERNER, Probation Officer Supervisor, JEFFREY BOOZER, Probation Officer, MARY ROSETTA, Case Manager for Probation and Parole, JEFFREY RONEY, BRYAN SNYDER, DELAWARE COUNTY, LAWRENCE COUNTY, | ) ) ) ) ) ) ) ) | United States Magistrate Judge Cynthia Reed Eddy |
| Defendants. | ) | |

**ORDER**

**AND NOW,** this 30th day of September, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED** that the Motion to Dismiss filed by Defendant Jeffrey Roney (ECF No. 119 *errata* 121) is **DENIED**.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF

17