IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILBERT WILSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 13-1529 |
| ) | |
| v. ) | |
| ) | |
| DENNIS HOERNER, Probation Officer ) | |
| Supervisor, JEFFREY BOOZER, ) | |
| Probation Officer, MARY ROSETTA, ) | United States Magistrate Judge |
| Case Manager for Probation and Parole, ) | Cynthia Reed Eddy |
| JEFFREY RONEY, BRYAN SNYDER, ) | |
| DELAWARE COUNTY, LAWRENCE ) | |
| COUNTY, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM OPINION[1]

**Cynthia Reed Eddy, United States Magistrate Judge**

This is a civil rights action initiated pursuant to 42 U.S.C. § 1983 alleging that the above-captioned Defendants violated Plaintiff Philbert Wilson's civil rights when he was detained for sixty-four days in the Lawrence County Jail without ever receiving the applicable revocation hearings to which state probationers are entitled. Pending before the Court is a motion to dismiss Plaintiff's fourth amended complaint filed by Defendants Delaware County and Sgt. Bryan Snyder (collectively "Moving Defendants"). (ECF No. 125).[2] For the reasons that follow, this motion will be denied.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have voluntarily consented to have the undersigned conduct any and all proceedings herein, including the authority to enter final judgment, with direct review by the United States Court of Appeals for the Third Circuit. (ECF Nos. 19, 21, 108, 116, 117).

[2] The other motions to dismiss filed by Defendants in response to the fourth amended complaint (ECF Nos. 119 *errata* 121, 129) will be addressed by the Court in separate opinions.

## I. Factual Background

The following factual allegations are taken from the fourth amended complaint (ECF No. 100), the operative pleading herein.

In April 2001, Plaintiff was convicted in the Delaware County Court of Common Pleas following a jury trial. Approximately eight years later, Plaintiff began serving a 72-month term of state-supervised probation. On May 12, 2013, while still on probation, the Pennsylvania Board of Probation and Parole ("PBPP") issued a 48-hour detainer directing officers from the City of New Castle Police Department to seize, arrest, and transport Plaintiff to the Lawrence County Jail based on technical violations.[3] During this arrest, Plaintiff was allegedly informed by the arresting officers that he was not being charged with any crimes and was advised by the jail's warden that he was being held in accord with orders from the PBPP. The next day, May 13, 2013, the Delaware County Special Probation division of the PBPP issued a second detainer against Plaintiff. This second detainer did not have an expiration date.

On May 14, 2013, a Technical Violation Arrest Report was prepared by the PBPP. It was signed by Plaintiff's Parole Agent, Defendant Jeffrey Boozer, and Boozer's supervisor, Dennis Hoerner. Hoerner recommended in this report that Plaintiff be detained pending disposition of the technical violations. On May 16, 2013, Boozer sent a Request for Court Detainer to Judge Hazel of the Delaware Court of Common Pleas, recommending that Plaintiff be held in confinement pending disposition of technical violations. This request was also signed by Hoerner in his capacity as Boozer's supervisor. That same day, a bench warrant was signed by a "back-up" judge of that same court, which provided that Lawrence County Jail's warden, Brian Covert, was commanded to take Plaintiff into custody based on violation of probation/parole as

---

[3] The technical violations included leaving the district without permission, violating curfew, and possessing drug paraphernalia.

reported by Boozer.

Although Rule 150(A)(5)(b) of the Pennsylvania Rules of Criminal Procedure requires that a hearing be held within 72 hours of the execution of a bench warrant, Plaintiff did not receive any such hearing. Plaintiff also did not receive a preliminary hearing within 14 days of his detention on the Board warrant as set forth in 37 Pa. Code § 71.2(3).

After more than two weeks of being detained in the Lawrence County Jail without ever receiving a hearing, Plaintiff was informed by Boozer on May 29, 2013 that Delaware County would be scheduling a *Gagnon* hearing[4] for Plaintiff. That same day, Plaintiff received a Notice of Charges and Hearing form from PBPP stating that "this notice is in reference to your upcoming: GAGNON I HEARING." However, no *Gagnon I* hearing was ever scheduled or held, and Plaintiff remained detained in the Lawrence County Jail for another month and a half.

The specific allegations against the Moving Defendants are as follows. Defendant Snyder was at all times relevant herein a Sergeant for the Delaware County Sheriff's Office and is alleged to have had first-hand knowledge of Plaintiff's continued incarceration without a hearing. In particular, Lawrence County Jail officials and Defendant Boozer called and left several messages with Sgt. Snyder regarding Plaintiff's detention and need for a *Gagnon* hearing. However, Sgt. Snyder failed to respond to any of said messages and never made

---

[4] As explained by our Court of Appeals:

> In *Gagnon v. Scarpelli*, the Supreme Court held that a person accused of violating the terms of his probation was entitled to two hearings before revocation and re-sentencing. See Gagnon v. Scarpelli, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The first, a *Gagnon I* hearing, serves to determine whether there was probable cause for the probation revocation. Gagnon, 411 U.S. at 782. The second, a *Gagnon II* hearing, determines whether the person in fact violated the conditions of his or her probation and whether s/he should be incarcerated. Commonwealth v. Sims, 770 A.2d 346, 349 (Pa.Super.Ct.2001) (citing Gagnon, 411 U.S. at 784).

Heilman v. T.W. Poness And Assoc., 2009 WL 82707, *1 n. 1 (3d. Cir. 2009).

3

arrangements for Plaintiff to be transported to Delaware County or receive any such hearing.[5] As to Delaware County, Plaintiff alleges that it had in place an official policy or custom of refusing to take physical custody of probationers, like Plaintiff, who were being detained in other counties and failing to transport them to Delaware County and provide them with the constitutionally-required *Gagnon* hearings or a hearing pursuant to Pa. R. Crim. P. 150. Alternatively, Delaware County failed to implement procedures for transporting such probationers and providing them the necessary hearings, notwithstanding the known or obvious consequences that failure to do so would result in a violation of the probationers' procedural due process rights. Specifically, in this case, numerous Delaware County officials, including Sgt. Snyder and Defendant Roney of the Delaware County Adult Probation and Parole ("DCAPP"), while acting under the direction and control of Delaware County, were made aware of Plaintiff's continued detention in the Lawrence County Jail but, in accordance with Delaware County policies or customs (or lack thereof), no arrangements were made for Plaintiff's transportation to Delaware County, and consequently, no *Gagnon* hearings were ever scheduled for Plaintiff.

As such, Plaintiff remained detained in the Lawrence County Jail indefinitely. About six weeks after Plaintiff was initially detained, on June 25, 2013, Plaintiff filed a petition for writ of habeas corpus in the Court of Common Pleas of Lawrence County. Even after this petition was filed, Delaware County and its officials took no actions to arrange for Plaintiff's transportation or to schedule a hearing. A hearing was held on Plaintiff's petition for writ of habeas corpus by President Judge Dominick Motto on July 15, 2013. At the hearing, Judge Motto noted that Plaintiff had not received *Gagnon* hearings and determined that Plaintiff's continued detention in

---

[5] In support of these allegations, Plaintiff attached e-mail chains to his complaint. In particular, an e-mail from Defendant Boozer to Defendant Roney states, "Called Lawrence Co Jail with regards [*sic*] to Philbert Wilson and they said they have left several messages with the Sheriff's Dept a SGT Bryan Snyder and he does not respond to them. I have called and left a message as well…" (4th Am. Compl., Ex. 10, ECF No. 100-10 at 4).

the Lawrence County Jail was unlawful under Pa. R. Crim. P. 150. Consequently, Judge Motto ordered that the warden immediately release Plaintiff.

## II. Procedural History

The procedural history of this case is long and convoluted. Plaintiff commenced this action while acting *pro se* on October 21, 2013 by filing a motion for leave to proceed *in forma pauperis*, and his original complaint (ECF No. 3) was filed on November 1, 2013. The original complaint named as Defendants the Commonwealth of Pennsylvania, multiple officers of the PBPP, and the warden of the Lawrence County Jail. These Defendants responded to the complaint by filing two motions to dismiss. After Plaintiff was granted multiple extensions of time to respond to the motions to dismiss, Plaintiff filed a motion for leave to file an amended complaint, which the Court granted on February 6, 2014, resulting in the two motions to dismiss being denied as moot.

The amended complaint (ECF No. 26) added the City of New Castle Police Department and Unknown New Castle police officers as Defendants. Defendants responded by filing three motions to dismiss. On April 1, 2014, the Court granted Plaintiff's request to file a second amended complaint, again resulting in the pending motions to dismiss being denied as moot. The second amended complaint (ECF No. 35) named three additional PBPP Defendants. The Defendants reasserted their motions to dismiss, which were again subsequently denied as moot when the Court granted Plaintiff's request to file a third amended complaint on November 25, 2014. The third amended complaint (ECF No. 55) added Danielle Hibberd, a Deputy Director of the DCAPP, as a Defendant.[6] Defendants responded by filing four motions to dismiss.

On March 13, 2015, the Court entered a Memorandum Opinion and Order (ECF No. 73)

---

[6] Hibberd was incorrectly identified in the third amended complaint as an employee of the PBPP.

in which it dismissed several of the claims against all of the Defendants and dismissed the warden and the City of New Castle entirely from the action.[7] Plaintiff's Fourth and Fourteenth Amendment claims against the unknown police officers, PBPP Defendants and Hibberd in their official capacities were dismissed but said claims against them in their individual capacities survived. The Court held a case management conference with the parties on April 8, 2015. Discovery was scheduled to close on September 8, 2015 and motions for summary judgment were due shortly thereafter. The case was referred to a pro bono mediation session and the Court appointed Plaintiff counsel solely for the limited purpose of the ADR session. Thereafter, on August 18, 2015, several notices of appearance were filed on behalf of Plaintiff, and the Court extended fact discovery and the summary judgment briefing schedule. The parties filed a stipulation of dismissal as to Defendant Hibberd on September 29, 2015, which the Court approved on October 7, 2015.

In November 2015, the Court extended the discovery and summary judgment periods again, and on February 5, 2016, on the last day of discovery, Plaintiff filed a motion for leave to file a fourth amended complaint to add new parties, which the Court granted on February 8, 2016. The fourth amended complaint (ECF No. 100) added several new Defendants, including Delaware County and Sgt. Snyder, and resulted in the filing of three motions to dismiss.[8]

---

[7] In particular, the Court dismissed the following claims in the third amended complaint as to all of the Defendants: Fifth Amendment claim, Thirteenth Amendment claim, *Bivens* claim, and a claim for damages under Article 1, § 8 of the Pennsylvania Constitution. The Court dismissed the remaining federal claims against the warden based on absolute immunity; dismissed the state law claims against him in his official capacity based on immunity pursuant to Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, *et seq.* ("PTSCA"); and dismissed the state law claims against him in his personal capacity for failure to state a claim. The Court dismissed the remaining federal claims against the City of New Castle for Plaintiff's failure to state a *Monell* claim, and dismissed the state law claims based on immunity under the PSTCA.

[8] It also added Lawrence County and Jeffrey Roney of the DCAPP. As stated above at note 2, these Defendants have filed separate motions to dismiss which are currently pending before the Court and which will be addressed by separate opinions.

Accordingly, the summary judgment briefing schedule has been stayed by the Court.

Moving Defendants contend that the fourth amended complaint should be dismissed because it was filed after the expiration of the statute of limitations and fails to state a claim against them. Additionally, Defendants contend that Sgt. Snyder is entitled to qualified immunity and that Plaintiff's claim for punitive damages should be dismissed. Plaintiff has responded to each of these arguments. The Court will address each argument *seriatim*.

III.  Discussion[9]

   A.  **Statute of Limitations and Relation Back Doctrine**

The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose, which in Pennsylvania is two-years. Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007) and 42 Pa. Cons. Stat. § 5524(2)). The accrual date, however, is governed by federal law. Wallace, 549 U.S. at 388. "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'" Kach, 589 F.3d at 634 (quoting Sameric Corp. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998)). The accrual date in this case is, at the very latest, July 15, 2013, the date that Judge Motto ordered that Plaintiff be released from the Lawrence County Jail. Therefore, applying the applicable two-year statute of limitations, the statute of limitations

---

[9] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under this standard, the well-pled facts are accepted as true and all reasonable inferences are drawn in a light most favorable to the nonmoving party. Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Additionally, although a limitations defense is an affirmative defense, Fed. R. Civ. P. 8(c)(1), which a defendant must normally plead and prove, Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002), a defendant may file a motion under Rule 12(b)(6) if it is apparent on the face of the complaint that the cause of action has not been brought within the statute of limitations, Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

expired on July 15, 2015.

As set forth above, while acting *pro se*, Plaintiff filed the original complaint, as well as three amended complaints, within this time period. However, the fourth amended complaint, which was submitted on behalf of Plaintiff after he retained counsel, was filed on February 9, 2016, approximately seven months after the statute of limitations expired. Because Delaware County and Sgt. Snyder were not added as parties to this lawsuit until Plaintiff filed the fourth amended complaint, they assert that it is apparent on the face of that pleading that the claims against them therein are barred by the statute of limitations. Additionally, they argue that the relation back doctrine under Rule 15(c) of the Federal Rules of Civil procedure is inapplicable. However, Plaintiff contends otherwise, arguing that his claims against these Defendants relate back to his earlier pleadings.

Under Rule 15(c), an amendment of a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). "If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been

8

filed at that time." Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003) (citing Singletary v. Pa. D.O.C., 266 F.3d 186, 189 (3d Cir. 2001)).

In order for relation back to apply to a party that was added after the statute of limitations expired, a plaintiff must show that: (1) the claim or defense set forth in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading; (2) within the time period provided in Rule 4(m),[10] the party or parties to be added received such notice of the action and would not be prejudiced in maintaining a defense;[11] and (3) the party sought to be added knew that, but for a mistake concerning his or her identity, he or she would have been made a party to the action. Garvin, 354 F.3d at 222 (citing Singletary, 266 F.3d at 194). As Defendants only challenge whether the notice requirement of the second condition is satisfied, we will limit our discussion to that issue.[12]

"Though not expressly stated, it is well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of

---

[10] The Court notes that effective December 1, 2015, the time period provided in Rule 4(m) was reduced from 120 days to 90 days. This rule change is inapplicable to this case, however, because all of the earlier pleadings were filed before this rule went into effect.

[11] Rule 15(c)(1)(C)(i) was amended in 2007 "as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed R. Civ. P. 15 Advisory Committee Notes to 2007 Amendment. "Former Rule 15(C)(3)(A) called for notice of the 'institution' of the action," however, the current version "omits the reference to 'institution' as potentially confusing" because "[w]hat counts is that the party to be brought in have notice of the existence of the action whether or not the notice includes details as to its 'institution.'" Id. In accord with this restyled rule change, this Court has omitted *Garvin's* reference to the requirement that the party to be added must have received notice of the "institution" of the action.

[12] Nevertheless, in his brief, Plaintiff more than sufficiently demonstrated that the first and third conditions of relation back are satisfied. Additionally, Defendants do not challenge whether Plaintiff has satisfied the second subpart of the second condition – the absence of prejudice – which is "closely intertwined" with notice. See Singletary, 266 F.3d at 194 n. 3 ("[O]nce it is established that the newly named defendant received some sort of notice within the relevant time period, the issue becomes whether the notice was sufficient to allay any prejudice the defendant might have suffered by not being named in the original complaint.").

limitations were intended to provide.'" Glover v. F.D.I.C., 698 F.3d 139, 145-46 (3d Cir. 2012) (citations omitted). Actual notice or service of process is not necessary. Singletary, 266 F.3d at 195. Our Court of Appeals has recognized two methods of imputing constructive notice on a new party: (1) the shared attorney method, and (2) the identity of interest method. Id.; Garvin, 345 F.3d at 222-23. Plaintiff argues that he has satisfied both of these methods.

The shared attorney method "is based on the notion that when the originally named party and the parties sought to be added are represented by the same attorney, 'the attorney is likely to have communicated to the latter party that he may very well be joined in the action.'" Garvin, 354 F.3d at 222-23. "The relevant inquiry under this method is whether notice of the … action can be imputed to [Moving Defendants] within the relevant 120 day period … by virtue of representation [Moving Defendants] shared with a defendant originally named in the lawsuit." Singletary, 266 F.3d at 196. The "identity of interest" method, which is closely related to the shared attorney method, "generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." Id. at 197 (quoting 6A Charles A. Wright et al., *Federal Practice And Procedure* § 1499, at 146 (2d ed. 1990)). Under the identity of interest method, "a non-management employee … does not [generally] share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to employee for Rule 15(c)[(1)(C)(i)] purposes," id. at 199, although courts within the Third Circuit have concluded that notice can be imputed to the new defendant under this method if he occupied a similar supervisory role as the previous named defendant. See Ammouri v. AdapptHouse, Inc., 2208 WL 2405762, * 5 & n. 11 (E.D. Pa. 2008); Montanez v. York City, Pa., 2014 WL 671433, *6 (M.D. Pa. 2014); Ward v. Taylor, 250 F.R.D. 165, 169 (D. Del. 2008).

Plaintiff contends that Sgt. Snyder and Delaware County had notice of this action within 120 days from the date that the third amended complaint was filed. The third amended complaint, which was timely filed within the limitations period on November 25, 2014 when Plaintiff was still acting *pro se*, named Danielle Hibberd as a Defendant. Hibberd is the Deputy Director of the DCAPP and was represented by Attorney Jason Bates of the law firm Holsten & Associates as early as January 2, 2015. (ECF No. 60). The relevant 120 day time period expired on March 30, 2015. Within this time period, on January 30, 2015, Attorney Bates filed a motion to dismiss on behalf of Hibberd, (ECF No. 67), which the Court subsequently denied on March 13, 2015. (ECF No. 73).[13] After Plaintiff retained counsel, Hibberd was voluntarily dismissed from this action by stipulation of the parties on September 29, 2015, which the Court approved on October 7, 2015. (ECF Nos. 93, 94). These Defendants were added to this action via the fourth amended complaint on February 9, 2016, and are represented by a member of the law firm Holsten and Associates: Attorney Mark A. Raith.

Plaintiff asserts that notice can be imputed to Moving Defendants through the shared attorney method because Attorney Bates, as a member of the same law firm that presently represents them, had an opportunity to investigate Plaintiff's claims within the relevant 120 day time period when he was preparing Hibberd's motion to dismiss and was likely to have communicated to Moving Defendants that they may very well be joined in this action, especially considering the attached e-mails suggesting that Delaware County and Sgt. Snyder were responsible for transporting and arranging for the hearings but failed to do so, despite being on notice that no such arrangements were being made. See (4th Am. Compl., Ex. 10 at 4). Notably, other courts have found that the shared attorney method applies when different attorneys of the

---

[13] Although Moving Defendants assert that Attorney Bates is no longer a member of Holsten & Associates, during the relevant 120 day time period, he was.

same law firm represent both the original and new defendants. See Browning v. Safmarine, Inc., 287 F.R.D. 288, 291 (D.N.J. 2012) (shared attorney method applicable based on the law firm's representation of the original and new defendants); Davis v. Corr. Med. Sys., 480 F.Supp.2d 754, 761 (D. Del. 2007) ("[T]he complaint on its face supports the inference that any investigation of the case by the shared attorneys (both with the same law firm) would have placed [the new defendants] on notice of … the action."). Here, the Court notes that it appears that Holsten and Associates routinely represents Delaware County, the DCAPP, the Delaware County Sheriff's Department, and their employees.[14] Thus, the Court agrees with Plaintiff that it is likely that when Attorney Bates was representing Hibberd and investigating the claims against her prior to March 30, 2015, he quickly would have discovered that Hibberd was not involved in the third amended complaint's allegations but that Sgt. Snyder and Delaware County were, and that Attorney Bates was likely to have communicated to Defendants that they may joined in the action.

Plaintiff similarly argues that that the identity of interest method is satisfied in light Hibberd's supervisory role within Delaware County as the Deputy Director of DCAPP. (ECF No. 135 at 7). At this stage, it appears that Sgt. Snyder also holds a supervisory role within Delaware County Sheriff's Office. The exhibits attached to Plaintiff's fourth amended complaint suggest that there was communication and collaboration between the DCAPP and the Delaware County Sheriff's Office relating to the transport and scheduling of *Gagnon* hearings. Thus,

---

[14] See, e.g., Beaver v. Delaware Cty. Prob. & Parole, 2016 WL 4366977 (E.D. Pa. 2016) (Attorney McDonough representing the DCAPP and its employees); T.R. v. Havens, 612 Fed. App'x 83 (3d Cir. 2015) (Attorney McDonough representing Delaware County and Attorney Raith representing an attorney appointed by the Delaware County Court of Common Pleas); Nelson v. Comm. of Pa., 2013 WL 12091670 (E.D. Pa. 2013) (Holsten and Associates representing the Commonwealth of Pennsylvania and Delaware County); Marvel v. Delaware Cty., 2009 WL 1544928 (E.D. Pa. 2009) (Attorney Raith representing Delaware County, and both the director and supervisor of the Delaware County Court-ordered Community Service Department); Deorio v. Delaware Cty., 2009 WL 2245067 (E.D. Pa. 2009) (Holsten and Associates representing Delaware County and the Delaware County Sheriff's Department).

Plaintiff contends that a sufficient nexus of interest exists between them to impute notice to Sgt. Snyder and Delaware County. The Court agrees and finds that when drawing all reasonable inferences in a light most favorable to Plaintiff, Plaintiff has demonstrated a sufficient nexus exists between Hibberd, Sgt. Snyder, and Delaware County such that we may infer that Sgt. Snyder and Delaware County received notice of this action when the third amended complaint added Hibberd as a Defendant. See Smith v. City of Phila, 363 F.Supp.2d 795, 801-02 (E.D. Pa. 2005).

Accordingly, as notice was the only portion of Rule 15(c) that moving Defendants assert is missing, Plaintiff has established that the fourth amended complaint and its claims therein asserted against Sgt. Snyder and Delaware County relate back to the earlier timely filed third amended complaint. Moving Defendants' motion to dismiss on statute of limitations grounds is therefore denied.

### B. Section 1983 Claims

Moving Defendants also assert that the claims against them in the fourth amended complaint are deficient on the merits. To state a viable § 1983 claim, the plaintiff must sufficiently plead that (1) the conduct complained of was committed by a person acting under the color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Twp of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). To that end, a defendant in a civil rights action must have personal involvement in the alleged wrongs. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Additionally, municipalities, like individuals, can be found liable for § 1983 claims. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). However, a municipality may not be found liable under a theory of *respondeat superior*, i.e.,

solely because it employs a tortfeasor. Id. Rather, the complaint must contain well-pled allegations that a municipal custom[15] or policy[16] caused the constitutional violation. Id. at 694. "To satisfy the pleading standard, [the plaintiff] must identify a custom or policy, and specify exactly what the custom or policy was." McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009) (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)).

The Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law." Schmidt v. Creedon, 639 F.3d 587, 595 (3d Cir. 2011) (citation and internal marks omitted). In *Gagnon v. Scarpelli*, the Supreme Court held that "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing." 411 U.S. 778, 782 (1973). Plaintiff asserts that Defendants, including Sgt. Snyder and Delaware County, deprived him of his constitutional right to receive the preliminary *Gagnon I* hearing while he was being held for more than two months in the Lawrence County Jail. "At the preliminary [*Gagnon I*] hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence on his own behalf, a conditional right to confront adverse witnesses, an independent decision maker, and a written report of the hearing." Id. at 786 (citing Morrissey v. Brewer, 408 U.S. 471, 478 (1972)).

---

[15] "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Monell, 436 U.S. at 690). Custom may also be established by evidence of knowledge and acquiescence. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

[16] "Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews, 895 F.2d at 1480 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

The Court rejects Moving Defendants' contention that the fourth amended complaint fails to state a claim under the Fourteenth Amendment against Sgt. Snyder. When drawing all reasonable inferences in a light most favorable to Plaintiff, the allegations in the fourth amended complaint lead to the reasonable expectation that discovery will reveal that Sgt. Snyder was personally responsible for arranging for Plaintiff's transport to Delaware County and scheduling the hearings and that he failed to do so, despite being on notice that Plaintiff was and would continue to be detained indefinitely in the Lawrence County Jail until those arrangements were made. Accordingly, Moving Defendants' motion to dismiss for failure to state a claim with respect to Plaintiff's allegations against Sgt. Snyder is denied.[17]

Similarly, the Court finds that the fourth amended complaint states a claim against Delaware County. Contrary to Moving Defendants' contention that this is simply an "inadequate training" claim, see (ECF No. 126 at 9-11), the fourth amended complaint alleges sufficient facts that the County had a policy or custom of refusing, or alternatively failed to have in place the necessary procedures for, the transport of probationers being held outside the County to Delaware County and scheduling the applicable hearings even after being on notice that such probationers were being held indefinitely and not being given the constitutionally-required hearings. The factual allegations in the fourth amended complaint support the conclusion that Delaware County, despite numerous notices that Plaintiff was being unlawfully detained, "turned a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights." Natale v. Camden Cty. Corr. Fac., 318 F.3d 575, 584 (3d Cir. 2003). Under such circumstances, Plaintiff is not required to demonstrate a pattern of similar

---

[17] Additionally, the Court finds that at this stage, it is premature to dismiss Plaintiff's claim for punitive damages against Sgt. Snyder. See Wareham v. Pa. DOC, 2013 WL 4523616, *14 (W.D.Pa. 2013). Further, Moving Defendants' motion to dismiss the claim for punitive damages against Delaware County is denied, as the fourth amended complaint seeks no such relief against Delaware County.

constitutional violations, as the need for particular government action is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to that need. Id. (quoting Bd. of Cty. Comm'rs of Bryan Cty., Okl. V. Brown, 520 U.S. 397, 417-18 (1997)); see also Berg v. Cty. of Allegheny, 219 F.3d 261, 277 (3d Cir. 2000) ("When such a simple mistake can so obviously lead to a constitutional violation, we cannot hold that the municipality was not deliberately indifferent to the risk as a matter of law."). Therefore, Moving Defendants motion to dismiss this claim against Delaware County is denied.

### C. Qualified Immunity

Moving Defendants also contend that Sgt. Snyder is entitled to qualified immunity. Under a qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "[T]o overcome the assertion of qualified immunity at the motion to dismiss stage, a plaintiff must sufficiently plead not only a violation of a constitutional or statutory right, but also a violation of a clearly established one." Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012). As set forth above, Plaintiff has pled that Sgt. Snyder's alleged conduct plausibly violated Plaintiff's clearly established constitutional right; that is, the right of a probationer to receive a preliminary hearing as set forth in *Gagnon*. Until the factual record is developed, the Court cannot conclude that Sgt. Snyder is entitled to qualified immunity. At the pleading stage, however, when accepting the well-pled facts as true and drawing all reasonable inferences in a light most favorable to Plaintiff, the fourth amended complaint contains sufficient allegations to withstand Moving Defendants' motion to dismiss.

See Zion v. Nassan, 727 F.Supp.2d 388, 402 (W.D. Pa. 2010) (concluding that the defendants were not entitled to qualified immunity at the motion to dismiss stage in light of the factual inferences that must be drawn in favor of the plaintiff, which when accepted as true, state a plausible violation of a clearly established right).

**IV.    Conclusion**

In accordance with the foregoing, Defendant Delaware County and Sgt. Snyder's motion to dismiss (ECF No. 125) is denied. An appropriate Order follows.


Dated: September 30, 2016.                                           By the Court:

                                                                     s/ Cynthia Reed Eddy
                                                                     Cynthia Reed Eddy
                                                                     United States Magistrate Judge

cc: all registered counsel via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILBERT WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-1529 |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS HOERNER, Probation Officer Supervisor, JEFFREY BOOZER, Probation Officer, MARY ROSETTA, Case Manager for Probation and Parole, JEFFREY RONEY, BRYAN SNYDER, DELAWARE COUNTY, LAWRENCE COUNTY, | ) | United States Magistrate Judge Cynthia Reed Eddy |
| | ) | |
| Defendants. | ) | |

**ORDER**

**AND NOW,** this 30th day of September, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED** that the motion to dismiss filed by Defendants Delaware County and Bryan Snyder (ECF No. 125) is **DENIED**.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF