IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| PHILBERT WILSON, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil Action No. 13-1529 |
| v. | ) | |
| DENNIS HOERNER, Probation Officer Supervisor, JEFFREY BOOZER, Probation Officer, MARY ROSETTA, Case Manager for Probation and Parole, JEFFREY RONEY, BRYAN SNYDER, DELAWARE COUNTY, LAWRENCE COUNTY, | ) | United States Magistrate Judge Cynthia Reed Eddy |
| Defendants. | ) | |

# MEMORANDUM OPINION[1]

**Cynthia Reed Eddy, United States Magistrate Judge**

This is a civil rights action initiated pursuant to 42 U.S.C. § 1983 alleging that the above-captioned Defendants violated Plaintiff Philbert Wilson's civil rights when he was detained for sixty-four days in the Lawrence County Jail without ever receiving the applicable revocation hearings to which state probationers are entitled. Pending before the Court is a motion to dismiss Plaintiff's fourth amended complaint filed by Defendant Lawrence County. (ECF No. 129).[2] For the reasons that follow, this motion will be granted.

   **I.   Factual Background**

The following factual allegations are taken from the fourth amended complaint (ECF No.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have voluntarily consented to have the undersigned conduct any and all proceedings herein, including the authority to enter final judgment, with direct review by the United States Court of Appeals for the Third Circuit. (ECF Nos. 19, 21, 108, 116, 117).

[2] The other motions to dismiss filed by Defendants in response to the fourth amended complaint (ECF Nos. 119 *errata* 121, 125) will be addressed in separate opinions.

100), the operative pleading herein.

In April 2001, Plaintiff was convicted in the Delaware County Court of Common Pleas following a jury trial. Approximately eight years later, Plaintiff began serving a 72-month term of state-supervised probation. On May 12, 2013, while still on probation, the Pennsylvania Board of Probation and Parole ("PBPP") issued a 48-hour detainer directing officers from the City of New Castle Police Department to seize, arrest, and transport Plaintiff to the Lawrence County Jail based on technical violations.[3] During this arrest, Plaintiff was allegedly informed by the arresting officers that he was not being charged with any crimes and was advised by the jail's warden that he was being held in accord with orders from the PBPP. The next day, May 13, 2013, the Delaware County Special Probation division of the PBPP issued a second detainer against Plaintiff. This second detainer did not have an expiration date.

On May 14, 2013, a Technical Violation Arrest Report was prepared by the PBPP. It was signed by Plaintiff's Parole Agent, Defendant Jeffrey Boozer, and Boozer's supervisor, Dennis Hoerner. Hoerner recommended in this report that Plaintiff be detained pending disposition of the technical violations. On May 16, 2013, Boozer sent a Request for Court Detainer to Judge Hazel of the Delaware Court of Common Pleas, recommending that Plaintiff be held in confinement pending disposition of technical violations. This request was also signed by Hoerner in his capacity as Boozer's supervisor. That same day, a bench warrant was signed by a "back-up" judge of that same court, which provided that Lawrence County Jail's warden, Brian Covert, was commanded to take Plaintiff into custody based on violation of probation/parole as reported by Boozer.

Although Rule 150(A)(5)(b) of the Pennsylvania Rules of Criminal Procedure requires

---

[3] The technical violations included leaving the district without permission, violating curfew, and possessing drug paraphernalia.

that a hearing be held within 72 hours of the execution of a bench warrant, Plaintiff did not receive any such hearing. Plaintiff also did not receive a preliminary hearing within 14 days of his detention on the Board warrant as set forth in 37 Pa. Code § 71.2(3).

After more than two weeks of being detained in the Lawrence County Jail without ever receiving a hearing, Plaintiff was informed by Boozer on May 29, 2013 that Delaware County would be scheduling a *Gagnon* hearing[4] for Plaintiff. That same day, Plaintiff received a Notice of Charges and Hearing form from PBPP stating that "this notice is in reference to your upcoming: GAGNON I HEARING." However, no *Gagnon I* hearing was ever scheduled or held, and Plaintiff remained detained in the Lawrence County Jail for another month and a half.

The only factual allegations in the fourth amended complaint against Lawrence County are that the Lawrence County Jail detained Plaintiff pursuant to Delaware County bench warrants and detainers, and that the Jail's officials, together with Defendant Boozer, called and left several messages with Defendant Snyder of the Delaware County Sheriff's Office regarding Plaintiff's detention and need for a *Gagnon* hearing, but Snyder failed to respond. The fourth amended complaint identifies no Lawrence County official or employee that interfered with or failed to provide Plaintiff a *Gagnon* hearing, and alleges no facts supporting a conclusion that Lawrence County had in place a custom or policy of illegally detaining inmates who have been deprived of

---

[4] As explained by our Court of Appeals:

> In *Gagnon v. Scarpelli*, the Supreme Court held that a person accused of violating the terms of his probation was entitled to two hearings before revocation and re-sentencing. See Gagnon v. Scarpelli, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The first, a *Gagnon I* hearing, serves to determine whether there was probable cause for the probation revocation. Gagnon, 411 U.S. at 782. The second, a *Gagnon II* hearing, determines whether the person in fact violated the conditions of his or her probation and whether s/he should be incarcerated. Commonwealth v. Sims, 770 A.2d 346, 349 (Pa.Super.Ct.2001) (citing Gagnon, 411 U.S. at 784).

Heilman v. T.W. Poness And Assoc., 2009 WL 82707, *1 n. 1 (3d. Cir. 2009).

3

timely constitutionally-required hearings, or that it approved and ratified the same.

On June 25, 2013, approximately six weeks after being initially detained, Plaintiff filed a petition for writ of habeas corpus in the Court of Common Pleas of Lawrence County. A hearing was held on Plaintiff's petition for writ of habeas corpus by President Judge Dominick Motto on July 15, 2013. At the hearing, Judge Motto noted that Plaintiff had not received *Gagnon* hearings and determined that Plaintiff's continued detention in the Lawrence County Jail was unlawful under Pa. R. Crim. P. 150. In his ruling, Judge Motto found that Lawrence County Jail's Warden Brian Covert, "through his representatives, promptly notified Delaware County of [Plaintiff's] incarceration," but "Delaware County ha[d] failed and refused to take physical custody of [Plaintiff] or conduct a bench warrant hearing or any other form of detention hearing." Finding that Delaware County failed to comply with Rule 150, Judge Motto determined that the bench warrant expired by operation of law under Rule 150(a)(7), and that there was no further lawful authority for the Lawrence County Jail to hold Plaintiff. Warden Covert immediately complied with Judge Motto's Order and promptly released Plaintiff.

## II.     Procedural History

The procedural history of this case is long and convoluted. Plaintiff commenced this action while acting *pro se* on October 21, 2013 by filing a motion for leave to proceed *in forma pauperis*, and his original complaint (ECF No. 3) was filed on November 1, 2013. The original complaint named as Defendants the Commonwealth of Pennsylvania, multiple officers of the PBPP, and the warden of the Lawrence County Jail. These Defendants responded to the complaint by filing two motions to dismiss. After Plaintiff was granted multiple extensions of time to respond to the motions to dismiss, Plaintiff filed a motion for leave to file an amended complaint, which the Court granted on February 6, 2014, resulting in the two motions to dismiss

being denied as moot.

The amended complaint (ECF No. 26) added the City of New Castle Police Department and Unknown New Castle police officers as Defendants. Defendants responded by filing three motions to dismiss. On April 1, 2014, the Court granted Plaintiff's request to file a second amended complaint, again resulting in the pending motions to dismiss being denied as moot. The second amended complaint (ECF No. 35) named three additional PBPP Defendants. The Defendants reasserted their motions to dismiss, which were again subsequently denied as moot when the Court granted Plaintiff's request to file a third amended complaint on November 25, 2014. The third amended complaint (ECF No. 55) added Danielle Hibberd, a Deputy Director of the DCAPP, as a Defendant.[5] Defendants responded by filing four motions to dismiss.

On March 13, 2015, the Court entered a Memorandum Opinion and Order (ECF No. 73) in which it dismissed several of the claims against all of the Defendants and dismissed the warden and the City of New Castle entirely from the action.[6] Plaintiff's Fourth and Fourteenth Amendment claims against the unknown police officers, PBPP Defendants and Hibberd in their official capacities were dismissed but said claims against them in their individual capacities survived. The Court held a case management conference with the parties on April 8, 2015. Discovery was scheduled to close on September 8, 2015 and motions for summary judgment were due shortly thereafter. The case was referred to a pro bono mediation session and the Court

---

[5] Hibberd was incorrectly identified in the third amended complaint as an employee of the PBPP.

[6] In particular, the Court dismissed the following claims in the third amended complaint as to all of the Defendants: Fifth Amendment claim, Thirteenth Amendment claim, *Bivens* claim, and a claim for damages under Article 1, § 8 of the Pennsylvania Constitution. The Court dismissed the remaining federal claims against the warden based on absolute immunity; dismissed the state law claims against him in his official capacity based on immunity pursuant to Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, *et seq.* ("PTSCA"); and dismissed the state law claims against him in his personal capacity for failure to state a claim. The Court dismissed the remaining federal claims against the City of New Castle for Plaintiff's failure to state a *Monell* claim, and dismissed the state law claims based on immunity under the PSTCA.

appointed Plaintiff counsel solely for the limited purpose of the ADR session. Thereafter, on August 18, 2015, several notices of appearance were filed on behalf of Plaintiff, and the Court extended fact discovery and the summary judgment briefing schedule. The parties filed a stipulation of dismissal as to Defendant Hibberd on September 29, 2015, which the Court approved on October 7, 2015.

In November 2015, the Court extended the discovery and summary judgment periods again, and on February 5, 2016, on the last day of discovery, Plaintiff filed a motion for leave to file a fourth amended complaint to add new parties, which the Court granted on February 8, 2016. The fourth amended complaint (ECF No. 100) added several new Defendants, including Lawrence County, and resulted in the filing of three motions to dismiss.[7] Accordingly, the summary judgment briefing schedule has been stayed by the Court.

Lawrence County argues that the claims asserted against it in the fourth amended complaint should be dismissed because it fails to plead facts of unconstitutional policies or customs, it does not plead any personal involvement by any Lawrence County officials, and there is no causal link between any purported unconstitutional policy or custom and the alleged harm. Plaintiff has responded to each of these arguments, and Lawrence County has filed a reply brief. Accordingly, the matter has been fully briefed and is ripe for disposition.

### III. Discussion[8]

---

[7] It also added Defendants Delaware County, Sgt. Bryan Snyder of the Delaware County Sheriff's Office, and Jeffrey Roney of the DCAPP. As stated above at note 2, these Defendants have filed separate motions to dismiss which are currently pending before the Court and which will be addressed by separate opinions.

[8] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under this standard, the well-pled facts are accepted

The fourth amended complaint alleges that Lawrence County violated Plaintiff's rights under the Fourteenth Amendment for detaining him without a *Gagnon I* or *II* hearing, and for failing to provide him with same. Without any supporting factual allegations, Plaintiff asserts that Lawrence County had in place official policies and customs, which it approved and ratified, of its unknown officials unlawfully detaining and falsely imprisoning probationers who had not received *Gagnon I* or *II* hearings or a hearing pursuant to Pa.R.Crim.P. ("Rule") 150. According to Plaintiff, it was obvious that the Lawrence County officials' failure to provide Plaintiff with these hearings would result in a violation of his procedural due process rights under the Fourteenth Amendment.

The Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law." Schmidt v. Creedon, 639 F.3d 587, 595 (3d Cir. 2011) (citation and internal marks omitted). In *Gagnon v. Scarpelli*, the Supreme Court held that "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing." 411 U.S. 778, 782 (1973). "At the preliminary [*Gagnon I*] hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence on his own behalf, a conditional right to confront adverse witnesses, an independent decision maker, and a written report of the hearing." Id. at 786 (citing Morrissey v. Brewer, 408 U.S. 471, 478 (1972)). "The final [*Gagnon II*] hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the

---

as true and all reasonable inferences are drawn in a light most favorable to the nonmoving party. Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

'minimum requirements of due process' include very similar elements."[9] Id.

Municipalities, like individuals, can be found liable for § 1983 claims. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). However, a municipality may not be found liable under a theory of *respondeat superior*, i.e., solely because it employs a tortfeasor. Id. Rather, the complaint must contain well-pled allegations that a municipal custom[10] or policy[11] caused the constitutional violation. Id. at 694. "To satisfy the pleading standard, [the plaintiff] must identify a custom or policy, and specify exactly what the custom or policy was." McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009) (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)). Additionally, "[o]nce a § 1983 plaintiff identifies a municipal policy or custom, he must 'demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'" Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (quoting Bd. of Cty. Com'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997)). Where the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate

---

[9] These similar elements are: (a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole. Gagnon, 411 U.S. at 786 (quoting Morrissey, 408 U.S. at 489).

[10] "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Monell, 436 U.S. at 690). Custom may also be established by evidence of knowledge and acquiescence. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

[11] "Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews, 895 F.2d at 1480 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

indifference as to its known or obvious consequences. Id.

As an initial matter, the fourth amended complaint does not contain any facts supporting its conclusory allegations that unknown Lawrence County officials were acting pursuant to official policy or custom (1) to deprive probationers of *Gagnon* hearings or hearings pursuant to Rule 150, or (2) to falsely imprison them knowing that they have been deprived of such hearings. Nor does the fourth amended complaint identify any of the alleged policymakers or officials who purportedly approved, ratified, and implemented said alleged unconstitutional policies. See Santiago v. Warminster Twp., 629 F.3d 121, 135 & nn. 10, 11 (3d Cir. 2010) (noting that "it is a key element of a *Monell claim*" that the plaintiff identify the individual(s) with final policymaking authority). As Lawrence County notes, this is true notwithstanding that Plaintiff has already had the benefit of discovery, and that since he retained counsel, the discovery period has been extended multiple times.

Further, contrary to Plaintiff's assertions, the Lawrence County Jail was not the entity responsible for providing him with the *Gagnon* hearings or a hearing under Rule 150. As set forth above, at the preliminary and final *Gagnon* hearings, a probationer is entitled to notice of the alleged probation violation(s), an opportunity to appear and to present evidence on his own behalf, a conditional right to confront adverse witnesses, an independent decision maker, and a written report of the hearing. See Gagnon, 411 U.S. at 786. It is difficult to imagine how these responsibilities fall on officials of the Lawrence County Jail who were simply detaining Plaintiff pursuant to a bench warrant issued by the Court of Common Pleas of Delaware County and a detainer issued by the Delaware County Special Probation division of the PBPP. Indeed, given that Plaintiff was being held pursuant to a bench warrant and detainer issued by Delaware County entities for purported technical probation violations, the officials of the Lawrence County Jail would not be in the position to provide Plaintiff a meaningful *Gagnon* hearing.

Plaintiff, in both his fourth amended complaint and brief in opposition to the pending motion, fails to specify how Lawrence County Jail officials could give Plaintiff adequate notice of the alleged probation violations, conduct a proceeding in which Plaintiff could present evidence on his own behalf, issue a written report of the hearing, act as an independent decisionmaker/hearing officer, or make a probable cause determination. Jails do not hold those duties. See Commonwealth v. Ferguson, 761 A.2d 613, 617 (Pa. Super. 2000) ("[T]he *Gagnon I* hearing is similar to the preliminary hearing afforded all offenders before a Common Pleas Court trial; the Commonwealth must show probable cause that the violation was committed.") (quoting Commonwealth v. Davis, 418 A.2d 669, 672 (Pa. Super. 1980)). In fact, the fourth amended complaint alleges that Plaintiff received notice of the charges against him from the PBPP and was informed that Delaware County would be scheduling his *Gagnon* hearings. Therefore, the Court's conclusion that the Lawrence County Jail was not obligated to provide or schedule *Gagnon* hearings for Plaintiff is bolstered by Plaintiff's own factual allegations.

Likewise, assuming *arguendo* that a violation of Rule 150 translates into a due process violation,[12] this rule nevertheless clearly provides that the bench warrant hearing "shall be conducted by the judicial officer who issued the bench warrant, or another judicial officer designated by the president judge or by the president judge's designee to conduct bench warrant hearings." Pa. R. Crim. P. 150(A)(1). The bench warrant was issued by a judicial officer from Delaware County. As such, no official from the Lawrence County Jail was obligated to provide Plaintiff with a bench warrant hearing. Under this rule, Lawrence County's only responsibility

---

[12] But see Robinson v. Smyth, 258 Fed. App'x 469, 471 (3d Cir. 2007) ("[V]iolations of state rules of [criminal] procedure do not automatically constitute violations of due process.") (citing Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 150 n. 4 (3d Cir. 2005) ("It is well established that state law does not ordinarily define the parameters of due process for Fourteenth Amendment purposes; rather, the minimum, constitutionally mandated requirements of due process in a given context and case are supplied and defined by federal law, not by state law or regulations." (internal quotation marks and citations omitted)).

was for the jail's warden Brian Covert to "promptly … notify the proper authorities in the county of issuance that the individual is being held pursuant to the bench warrant." Id. at 150(A)(4). Both the fourth amended complaint and Judge Motto's Order requiring that Plaintiff be released from the Lawrence County Jail provide that Warden Covert fully complied with this provision.

Given that Lawrence County was not required to actually provide Plaintiff with *Gagnon* hearings or a bench warrant hearing under Rule 150, we turn to Plaintiff's other assertion that Lawrence County violated his due process rights by failing to release him after the Board detainer expired by operation of law. There are simply no factual allegations whatsoever supporting Plaintiff's conclusory assertions that Lawrence County approved and ratified any "deliberate, malicious, reckless, and wanton" conduct of its unknown officials relating to the refusal to release inmates who had been deprived of timely constitutionally-required hearings. In light of the procedural posture and history of this case, wherein Plaintiff has been afforded the opportunity to amend his complaint four times and has been granted multiple extensions of discovery after he retained counsel, his failure to name a single Lawrence County official or decisionmaker that allegedly participated in or deliberately approved and ratified this conduct is particularly telling. See Santiago, 629 F.3d at 135 & nn. 10, 11.

Although the Court understands Plaintiff's frustration in being detained for more than two months in the Lawrence County Jail without receiving the appropriate hearings to which he was entitled, the fourth amended complaint, as it relates to Lawrence County, fails to state a claim for municipal liability. As Lawrence County notes, the proper Defendants are already in this case, and it is not one of them. The fourth amended complaint and Judge Motto's Order provide that the Lawrence County officials were taking affirmative steps to resolve Plaintiff's situation and that they were actively engaged in seeking to have the Delaware County officials transfer Plaintiff from the Lawrence County Jail so that he could receive his hearings. See Williamson v. Brownfield, 617 Fed.

11

App'x 201, 205 (3d Cir. 2015) (citing Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895 (1961) ("The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.")).

Further, Plaintiff has not alleged any well-pled facts supporting an inference that the conduct of any of the unknown Lawrence County officials was attributable to the County itself. Thus, it follows that the fourth amended complaint fails to establish that any municipal action was taken by Lawrence County with the requisite degree of culpability and was the causal link, or moving force, behind the injury alleged. See Bryan Cty., 520 U.S. at 404. Nor has Plaintiff alleged any well-pled facts that Lawrence County itself exhibited deliberate indifference to known or obvious consequences. See Berg, 219 F.3d at 776. To the contrary, based on Plaintiff's allegation that Lawrence County officials were pressuring the Delaware County officials to get Plaintiff transferred out of the Lawrence County Jail, the Court cannot conclude, even when drawing all reasonable inferences in a light most favorable to Plaintiff, that Lawrence County was deliberately indifferent to inmates being detained without timely hearings. See Moore v. Tartler, 986 F.2d 682, 687 (3d Cir. 1993) (mistaken six-month delay in a prisoner's release did not constitute deliberate indifference because, although the defendants' efforts were "slow and incompetent," they undisputedly "attempt[ed] to resolve the confusion" and took "affirmative steps … toward that end.")

Because Plaintiff has already been given four chances to amend his complaint and has already had the benefit of discovery, the Court finds that allowing amend at this stage of the proceedings would be both inequitable and futile.

**IV.   Conclusion**

Based on the foregoing, Lawrence County's motion to dismiss will be granted in its entirety, and Lawrence County will be dismissed from this action by separate Order.

Dated:  September 30, 2016.                                By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF