IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILBERT WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-1529 |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS HOERNER, Probation Officer | ) | |
| Supervisor, JEFFREY BOOZER, | ) | |
| Probation Officer, MARY ROSETTA, | ) | United States Magistrate Judge |
| Case Manager for Probation and Parole, | ) | Cynthia Reed Eddy |
| JEFFREY RONEY, BRYAN SNYDER, | ) | |
| and DELAWARE COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**[1]

**Cynthia Reed Eddy, United States Magistrate Judge**

This is a civil rights action initiated pursuant to 42 U.S.C. § 1983 alleging that the above-captioned Defendants violated Plaintiff Philbert Wilson's civil rights when he was detained for sixty-four days in the Lawrence County Jail without ever receiving the applicable revocation hearings to which state probationers are entitled. Pending before the Court are motions for summary judgement filed by Defendant Jeffrey Roney [ECF No. 149], Defendants Delaware County and Bryan Snyder [ECF No. 156] and Defendants Jeffrey Boozer and Dennis Hoerner. [ECF No. 178][2]. The matters have been fully briefed and are ripe for review.

For the reasons that follow, the motions will be denied.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have voluntarily consented to have the undersigned conduct any and all proceedings herein, including the authority to enter final judgment, with direct review by the United States Court of Appeals for the Third Circuit. (ECF Nos. 19, 21, 108, 116, 117).

[2] Plaintiff intends to voluntarily dismiss his claim as to Defendant Mary Rosetta [ECF No. 186 at n.1], and thus, we will not address the Motion for Summary Judgment [ECF No. 178] as to that Defendant.

1

## I. Factual Background

Unless otherwise stated, based upon our review of the record, the following facts are not in dispute.

In April 2001, Plaintiff was convicted in the Delaware County Court of Common Pleas following a jury trial. Approximately eight years later, Plaintiff began serving a 72-month term of state-supervised probation. On May 12, 2013, while still on probation, the Pennsylvania Board of Probation and Parole ("PBPP") issued a 48-hour detainer directing officers from the City of New Castle Police Department to seize, arrest, and transport Plaintiff to the Lawrence County Jail based on technical violations.[3] The next day, May 13, 2013, the Delaware County Special Probation division of the PBPP issued a second detainer against Plaintiff. This second detainer did not have an expiration date, but pursuant to PBPP rules would expire after 14 days.

On May 14, 2013, a Technical Violation Arrest Report was prepared by the PBPP. It was signed by Plaintiff's Parole Agent, Defendant Jeffrey Boozer, and Boozer's supervisor, Dennis Hoerner. On the PBPP-331 form, Hoerner did not "check" the box for "schedule Gagnon hearing." Hoerner and Boozer testified that "[i]t would be the board's responsibility to request a Gagnon I"). Regardless, Hoerner chose not to check it because he and Boozer were unaware "as to what the process was to schedule a Gagnon I hearing in Delaware County." On May 14, 2013, Defendant Boozer contacted the office of the Delaware County Adult Probation and Parole ("DCAPP") to seek assistance in obtaining a bench warrant and scheduling a *Gagnon* hearing to pursue the alleged technical violations of Wilson's parole. Defendant Boozer testified that in his experience as a parole agent, an individual from the sentencing county's adult probation office

---

[3] The technical violations included leaving the district without permission, violating curfew, and possessing drug paraphernalia.

2

typically facilitates communications between the PBPP and the sentencing court. He also testified that in his experience as a parole agent, the sentencing county's adult probation office would schedule any *Gagnon* hearings. A representative of DCAPP informed Boozer that Defendant Roney, Supervisor with the DCAPP, would be his point of contact at the DCAPP for transports and assisting with scheduling *Gagnon* hearings. Boozer had never supervised probationers in Delaware County before.

On May 16, 2013, Defendant Boozer spoke to Defendant Roney and Roney agreed to assist. Boozer sent a Request for Court Detainer to Judge Hazel of the Delaware Court of Common Pleas, recommending that Plaintiff be held in confinement pending disposition of technical violations with "possible charges pending." This request was also signed by Hoerner in his capacity as Boozer's supervisor. That same day, a bench warrant was signed by a "back-up" judge of that same court, which provided that Lawrence County Jail's warden, Brian Covert, was commanded to take Plaintiff into custody based on violation of probation/parole as reported by Boozer. On May 22, 2013, Boozer "rec'd [sic] email back from Supervisor Roney. He said he just got the signed Detainer today and w/fax [sic] it to me."

Although Rule 150(A)(5)(b) of the Pennsylvania Rules of Criminal Procedure requires that a hearing be held within 72 hours of the execution of a bench warrant, Plaintiff did not receive any such hearing. Plaintiff also did not receive a preliminary hearing within 14 days of his detention on the Board warrant as set forth in 37 Pa. Code § 71.2(3).

After more than two weeks of being detained in the Lawrence County Jail without ever receiving a hearing, Plaintiff was informed by Boozer on May 29, 2013 that Delaware County would be scheduling a *Gagnon* hearing[4] for Plaintiff. That same day, Plaintiff received a Notice

---

[4] As explained by our Court of Appeals:

of Charges and Hearing form from PBPP stating that "this notice is in reference to your upcoming: GAGNON I HEARING." However, no *Gagnon I* hearing was ever scheduled or held, and Plaintiff remained detained in the Lawrence County Jail for another month and a half.

On May 29, 2013, Hoerner e-mailed Roney, reporting pressure by Lawrence County about Wilson still being there and asking if Delaware County would facilitate transport or if the Board needed to pursue on their end, and was informed that someone from Lawrence County needed to contact the District Attorney's Office and provided the name and telephone number to that person to set up extradition. As of May 31, Boozer's notes state: "Right now it does not appear that P w/be charged w/any crimes."

The record evidence further shows that Defendant Snyder, a Sergeant at the Delaware County Sheriff's Office who receives calls regarding extradition transports to Delaware County, failed to respond to any of Boozer's or other Lawrence County employees' calls regarding Plaintiff. In particular, Ms. King, an employee in the Records Department at the Lawrence County Jail in 2013, called Sgt. Snyder and left a message on June 12, 2013 about Wilson's transfer. Ms. King then made another call on June 25, 2013 because Plaintiff's transfer had not yet occurred and Plaintiff had still not received his *Gagnon I* hearing. Boozer followed with a call on June 28, 2013, but the "phone rang off the hook." Boozer again contacted Roney, informing Roney that both he and personnel from the Lawrence County Jail had left several

---

> In *Gagnon v. Scarpelli*, the Supreme Court held that a person accused of violating the terms of his probation was entitled to two hearings before revocation and re-sentencing. *See Gagnon v. Scarpelli*, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The first, a *Gagnon I* hearing, serves to determine whether there was probable cause for the probation revocation. *Gagnon*, 411 U.S. at 782. The second, a *Gagnon II* hearing, determines whether the person in fact violated the conditions of his or her probation and whether s/he should be incarcerated. *Commonwealth v. Sims*, 770 A.2d 346, 349 (Pa. Super. Ct. 2001) (citing *Gagnon*, 411 U.S. at 784).

*Heilman v. T.W. Poness and Assoc.,* 2009 WL 82707, *1 n. 1 (3d. Cir. 2009).

messages with the Sherriff's Office, specifically to Sgt. Snyder, without any response. Ms. King made another call on July 2, 2013, when Sgt. Snyder finally answered, whereupon she explained that a petition hearing for Wilson had been scheduled. Snyder did not return these numerous messages while on vacation, and Delaware County appears not to have implemented a written policy or procedure with respect to supervising and/or scheduling hearings to ensure that its employee's vacations do not impact the timely transportation of probationers. It is unclear from the record whether Sgt. Snyder was unaware that Lawrence County wanted to transport Plaintiff Philbert Wilson or failed to act upon several attempts of contact by the Lawrence County Jail and Defendant Jeffrey Boozer.

About six weeks after Plaintiff was initially detained, on June 25, 2013, Plaintiff filed a petition for writ of habeas corpus in the Court of Common Pleas of Lawrence County. A hearing was held on this petition by President Judge Dominick Motto on July 15, 2013. At the hearing, Judge Motto noted that Plaintiff had not received *Gagnon* hearings and determined that Plaintiff's continued detention in the Lawrence County Jail was unlawful under Pa. R. Crim. P. 150. Consequently, Judge Motto ordered that the warden immediately release Plaintiff.

**II. The Summary Judgment Standard**

To prevail on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To assess whether the moving party has satisfied this standard, the court does not engage in credibility determinations, *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998), and views the facts and draws all reasonable inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Pearson v. Prison Health Service,* 850 F.3d 526, 533-34 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

### III. Discussion

In their motions Defendants argue they are entitled to entry of summary judgment because the action is barred by the applicable statute of limitations; the delay in having a hearing does not rise to the level of a violation of a 14th Amendment constitutional right to due process; there is inadequate proof as to Defendants' personal involvement under § 1983; and the individual defendants are entitled to qualified immunity. Plaintiff has responded to each of these arguments. The Court will address each argument *seriatim*.

#### A. Statute of Limitations

On September 30, 2016, this Court entered a Memorandum Opinion and Order denying the Motion to Dismiss filed by Roney. [ECF No. 138]. Relying on the shared attorney method as well as the sufficiency of the nexus of interest between Roney and a prior defendant Hibberd we held that Plaintiff has established that the Fourth Amended Complaint and its claims therein

asserted against Roney relate back to the earlier timely filed third amended complaint[5], and denied Roney's motion to dismiss on statute of limitations grounds. [ECF No. 138 at 6-12]. We similarly so held as to defendant Snyder, noting "Wilson has demonstrated a sufficient nexus exists between Hibberd, Sgt. Snyder, and Delaware County such tht we may infer that Sgt. Snyder and Delaware County received notice of this action when the third amended complaint added Hibberd as a defendant." [ECF No. 139 at 13.]

To resolve the 12(b)(6) motion, we may look at public records, including judicial proceedings, in addition to the allegations in the complaint. We noted the timing of the filing of the Third Amended Complaint, the dates on which prior defendant (Danielle Hibberd, a Deputy Director of the DCAPP) was represented by the same law firm, as well as the dates Hibberd was voluntarily dismissed and Roney was added. We also noted the prior representation of Delaware County, the DCAPP, the Delaware County Sheriff's Department, and their employees by the same law firm. In accordance with the applicable rule, Fed. R. Civ. P. 15(c), these uncontroverted public records, in conjunction with the allegations in the Fourth Amended Complaint, lead us to deny the motion to dismiss and permit the case to proceed to discovery phase.

Defendants now asks that we revisit the statute of limitations issue, noting that after the completion of discovery, there is no evidence that Snyder, Delaware County or Roney received actual notice of the matter prior to being served with the Fourth Amended Complaint or that they shared representation with any of the original defendants within the 120 day period after the filing of the original complaint. Plaintiff, clearly not anticipating this line of argument, objects,

---

[5] It is undisputed that the accrual date in this case is, at the very latest, July 15, 2013, the date that Judge Motto ordered that Plaintiff be released from the Lawrence County Jail. Therefore, applying the applicable two-year statute of limitations, the statute of limitations expired on July 15, 2015. The fourth amended complaint, which was submitted on behalf of Plaintiff after he retained counsel, was filed on February 9, 2016, approximately seven months after the statute of limitations expired.

7

arguing he would be prejudiced because he did not pursue discovery of whether said defendants received actual notice, having relied on the doctrine of the law of the case. This placed the Plaintiff, as the non-movant herein, in a position of not having any evidence or specific facts to show there is a genuine issue of material fact. Plaintiff asks that in the event the Court would consider its prior holding to be outside the law of the case, they be afforded an opportunity to submit an affidavit in accordance with Fed. R. Civ. P. 56(d) and to be permitted to pursue additional discovery on this issue.

The law of the case doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Young v. Smith*, 2016 WL 3522965, at *10 (M.D. Pa. June 28, 2016) (quoting *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010)). However this doctrine is not applicable to preliminary motions to dismiss. Even if the Court had made findings when deciding the motion to dismiss, which we did not**,** the law of the case doctrine would still be inapplicable. *See Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 474 n.11 (3d Cir. 1997) ("Judge's findings, 'which are addressed to the preliminary motion to dismiss, are not 'the law of the case[,]' ... do not control the issues ... upcoming in connection with the motions for summary judgment.'") (quoting *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.*, 505 F. Supp. 1125, 1185 (E.D. Pa. 1980)); *see also Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994) ("Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case.").

That Plaintiff's counsel was lead to believe that we had made a final determination is regrettable. Defendants are entitled to assert this affirmative defense, and although this case has lasted for several years, in the interest of justice and under the circumstances, we will deny the

motion for summary judgment without prejudice as to this issue. The parties may have 30 days to conduct further discovery, which the court will schedule by separate order, as to notice and the timeliness of this action.

      B.      **Section 1983 - Personal Involvement**

Defendants also asserts that summary judgment should be entered in their favor as to Plaintiff's 14th Amendment claims brought pursuant to Section 1983. To state a viable § 1983 claim, the plaintiff must sufficiently plead that (1) the conduct complained of was committed by a person acting under the color of state law[6], and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See *Groman v. Twp of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). To that end, a defendant in a civil rights action must have personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law." *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (citation and internal marks omitted).

In *Gagnon v. Scarpelli*, the Supreme Court held that "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing." 411 U.S. 778, 782 (1973). Plaintiff asserts that Defendants deprived him of his constitutional right to receive the preliminary *Gagnon I* hearing while he was being held for more than two months in the Lawrence County Jail. The law is clear. "At the preliminary [*Gagnon I*] hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to

---
[6] There is no dispute that the individual defendants were acting under color of state law.

present evidence on his own behalf, a conditional right to confront adverse witnesses, an independent decision maker, and a written report of the hearing." Id. at 786 (citing *Morrissey v. Brewer*, 408 U.S. 471, 478 (1972)).

1. *Defendant Roney*

Roney does not dispute that Plaintiff was entitled to a *Gagnon I* hearing during his detention in the Lawrence County Jail. He rather contends that the 64 days without a preliminary revocation hearing is not unconstitutional, and that he was not personally involved in the alleged deprivation. Roney relies upon inapplicable case law which addresses the timing of the second, final revocation hearing rather than the relevant *Gagnon I* preliminary hearing at issue in this case. Moreover, there are genuine issues of material fact as to Roney's personal involvement in the deprivation sufficient to allow this case to proceed to trial. A reasonable factfinder could conclude that Roney had stepped into the role as a point of contact for Boozer, offering to help obtain the bench warrant as well as making arrangements as to the scheduling of the *Gagnon I* hearing. The record evidence reflects that Roney represented that an in-person hearing in Delaware County (rather than by video conference) was necessary, and that Roney may have delayed the requisite hearing by failing to respond to Boozer and failing to arrange for Plaintiff's transportation to Delaware County. A reasonable factfinder could conclude, based on the record evidence before us, that Defendant Roney was fully aware that Plaintiff continued to be detained without any Gagnon hearing, yet he failed to take any steps to ensure that Plaintiff's constitutional rights did not continue to be violated, and he failed to inform the appropriate person in his office of the need for a hearing, later apologizing for certain errors.

2. *Defendant Snyder*

Defendant Snyder similarly argues that he was not personally involved in the

deprivation of Wilson's constitutional rights because he was not responsible for Wilson's transport. However, the evidence of record shows that a reasonable factfinder could conclude that Snyder failed at performing his job duty of answering calls regarding transport requests and directing those requests to the correct person. Snyder appears to have failed to return messages and failed to find a suitable replacement while he was on vacation, and that he was contacted by the Lawrence County Jail and Boozer about transporting Wilson for his *Gagnon I* hearing. Jaime King made numerous phone calls which went unanswered. These facts establish a genuine issue of material fact as to whether Snyder was personally involved in the deprivation of Plaintiff's constitutional rights, and therefore, summary judgment will be denied in this regard.

      3. *Defendants Boozer and Hoerner*

Defendants Boozer and Hoerner move for summary judgment and argue that they were not personally involved and their office had no control over Wilson's placement. However, the record evidences shows that a reasonable factfinder could disagree, and could instead find that both had knowledge that he was being detained without a timely *Gagnon I* hearing and failed to take any appropriate action to prevent it, and furthermore, they took affirmative steps in obtaining the initial detainer and later, the bench warrant, without "checking the box" and ensuring that a *Gagnon I* hearing would be scheduled. Defendants Boozer and Hoerner concede that Wilson did not receive a *Gagnon I* hearing during his 64-day incarceration. They believed their 14 day warrant had expired yet took no further action to provide him with a hearing. Boozer testified that Wilson has a "legitimate complaint" and that "If I was that probationer, I would be angry." Boozer and Hoerner were personally involved in the securing of the board and court detainers. On July 17, 2013 (two days after Wilson's release), Hoerner sent an email stating "I'm respectfully requesting that acceptance of this case be rescinded and the case be sent back to

11

Delaware County due to the lack of provision of due process and the inability of PBPP to enforce any of its conditions." In the end, drawing all inferences in Plaintiff's favor, a reasonable jury could find that these defendants contributed to the deprivation of Plaintiff's rights.

        4. D*efendant Delaware County*

The liability of a municipality under 42 U.S.C. § 1983 is governed by *Monell v. Department of Social Services,* 436 U.S. 658 (1978). Municipalities cannot be found vicariously liable under the doctrine of respondeat superior for claims that their employees violated an individual's civil rights. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Rather, a plaintiff seeking to hold a municipality liable for a civil rights violation caused by a municipal employee must prove (1) the existence of a custom or policy of the municipality (2) pursuant to which the municipality's employee violated the plaintiff's civil rights. *Monell*, 436 U.S. at 694; *see also Bryan Cnty*., 520 U.S. at 403; *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000).

Delaware County argues that it is entitled to summary judgment as there is no evidence in the record to support an inference that it had a policy or custom of refusing, or alternatively, failed to have in place, the necessary procedures for transportation of probationers held outside of the County and/or scheduling the applicable hearings under these circumstances. The record evidence shows, however, that a reasonable factfinder could conclude that Delaware County had no requisite policies or procedures, and to the extent a policy existed, and to the extent its employees were not adequately trained as to that policy, it was insufficient and can be said to have caused and contributed to the constitutional deprivation herein. Delaware County had jurisdiction over Plaintiff at the time of his arrest in May of 2013, a jury could conclude that its employees failed to act appropriately through a series of decisions and failures to act, and

12

possibly, as a result of inadequate training and policymaking on its part. Therefore, Delaware County's motion for summary judgment will be denied.

### C.     Qualified Immunity

Defendants also contends that they are entitled to qualified immunity. Under a qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In light of the record before us, we find that Defendants personally participated in the deprivation of Plaintiff's clearly established constitutional right; that is, the right of a probationer to receive a preliminary hearing as set forth in *Gagnon*. Defendant Boozer (in charge of Plaintiff's supervision) and Hoerner failed to take appropriate steps to get a hearing scheduled, seeking a withdrawal of the board warrant, or requesting the detainers be rescinded despite knowing a hearing had not been scheduled. Hoerner did not request the hearing on the PBPP-331 form, nor did he follow up on complaints that Plaintiff was illegally detained. Defendant Roney, who assisted Boozer in obtaining the warrant, frequently communicated with Boozer regarding the need for the hearing, inaccurately informed Boozer that Plaintiff had to be transported, gave the wrong contact information as to who should schedule transportation. Defendant Snyder failed to respond and take the request for Plaintiff's transfer and did not ensure his position was covered while he was on vacation.

All Defendants have failed to meet their burden to show that they are entitled to qualified immunity and therefore, summary judgement will be denied.

### IV.    Conclusion

In accordance with the foregoing, Defendants motion for summary judgment will be

denied.  An appropriate Order follows.

  DATED:  December 21, 2017  /s/ Cynthia Reed Eddy
               Cynthia Reed Eddy
               United States Magistrate Judge

  Cc: record counsel via CM-ECF

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILBERT WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-1529 |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS HOERNER, Probation Officer Supervisor, JEFFREY BOOZER, Probation Officer, MARY ROSETTA, Case Manager for Probation and Parole, JEFFREY RONEY, BRYAN SNYDER, and DELAWARE COUNTY, | ) ) ) ) ) ) ) | United States Magistrate Judge Cynthia Reed Eddy |
| Defendants. | ) | |

## ORDER

**AND NOW,** this 21st day of December, 2017, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED** that the Motion for Summary Judgment filed by Defendants Jeffrey Roney [ECF No. 149], Defendants Delaware County and Bryan Snyder [ECF No. 156] and Defendants Jeffrey Boozer and Dennis Hoerner. [ECF No 178] are **DENIED**.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF