IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PHILBERT WILSON,                    )
                                    )
         Plaintiff,                 )          Civil Action No. 13-1529
                                    )
         v.                         )
                                    )
DENNIS HOERNER, Probation Officer    )
Supervisor, JEFFREY BOOZER,          )
Probation Officer, MARY ROSETTA,     )          United States Magistrate Judge
Case Manager for Probation and Parole,)         Cynthia Reed Eddy
JEFFREY RONEY, BRYAN SNYDER,         )
and DELAWARE COUNTY,                 )
                                    )
         Defendants.                )


## MEMORANDUM OPINION[1]

**Cynthia Reed Eddy, United States Magistrate Judge**

        This is a civil rights action initiated pursuant to 42 U.S.C. § 1983 alleging that the above-

captioned Defendants violated Plaintiff Philbert Wilson's civil rights when he was detained for

sixty-four days in the Lawrence County Jail without receiving the applicable revocation hearings

to which state probationers are entitled.  Pending before the Court are motions for summary

judgment filed by Defendant Jeffrey Roney [ECF No. 204], Defendants Delaware County and

Bryan Snyder [ECF No. 203] and Defendants Jeffrey Boozer and Dennis Hoerner.  [ECF No.

213][2].  The matters have been fully briefed and are ripe for review.

_____

[1]    Pursuant to 28 U.S.C. § 636(c), the parties have voluntarily consented to have the undersigned
conduct any and all proceedings herein, including the authority to enter final judgment, with direct review
by the United States Court of Appeals for the Third Circuit.  (ECF Nos. 19, 21, 108, 116, 117).

[2]   Plaintiff intends to voluntarily dismiss his claim as to Defendant Mary Rosetta [ECF No. 219 at n.1],
and thus, we will not address the Motion for Summary Judgment [ECF No.  213] as to Rosetta.

## I.    Factual Background

Unless otherwise stated, based upon our review of the record, the following facts are not in dispute.

In April 2001, Plaintiff was convicted in the Delaware County Court of Common Pleas following a jury trial.  Approximately eight years later, Plaintiff began serving a 72-month term of state-supervised probation.  On May 12, 2013, while still on probation, the Pennsylvania Board of Probation and Parole ("PBPP") issued a 48-hour detainer directing officers from the City of New Castle Police Department to seize, arrest, and transport Plaintiff to the Lawrence County Jail based on technical violations.  The next day, May 13, 2013, the Delaware County Special Probation division of the PBPP issued a second detainer against Plaintiff.  This second detainer did not have an expiration date, but pursuant to PBPP rules would expire after 14 days.

On May 14, 2013, a Technical Violation Arrest Report was prepared by the PBPP.  It was signed by Plaintiff's Parole Agent, Defendant Jeffrey Boozer, and Boozer's supervisor, Dennis Hoerner. On the PBPP-331 form, Hoerner did not "check" the box for "schedule Gagnon hearing." Hoerner and Boozer testified that "[i]t would be the board's responsibility to request a Gagnon I").  Regardless, Hoerner chose not to check it because he and Boozer were unaware "as to what the process was to schedule a Gagnon I hearing in Delaware County." On May 14, 2013, Defendant Boozer contacted the office of the Delaware County Adult Probation and Parole ("DCAPP") to seek assistance in obtaining a bench warrant and scheduling a *Gagnon* hearing to pursue the alleged technical violations of Plaintiff's parole. Defendant Boozer testified that in his experience as a parole agent, an individual from the sentencing county's adult probation office typically facilitates communications between the PBPP and the sentencing court.  He also testified that in his experience as a parole agent, the sentencing county's adult probation office

would schedule any *Gagnon* hearings. A representative of DCAPP informed Boozer that Defendant Roney, Supervisor with the DCAPP, would be his point of contact at the DCAPP for transports and assisting with scheduling *Gagnon* hearings. Boozer had never supervised probationers in Delaware County before.

On May 16, 2013, Defendant Parole Agent Boozer spoke to Defendant Roney and Roney agreed to assist. Boozer sent a Request for Court Detainer to Judge Hazel of the Delaware Court of Common Pleas, recommending that Plaintiff be held in confinement pending disposition of technical violations with "possible charges pending." This request was also signed by Hoerner in his capacity as Boozer's supervisor. That same day, a bench warrant was signed by a "back-up" judge of that same court, which provided that Lawrence County Jail's warden, Brian Covert, was commanded to take Plaintiff into custody based on violation of probation/parole as reported by Boozer. On May 22, 2013, Boozer "rec'd [sic] email back from Supervisor Roney. He said he just got the signed Detainer today and w/fax [sic] it to me."

Although Rule 150(A)(5)(b) of the Pennsylvania Rules of Criminal Procedure requires that a hearing be held within 72 hours of the execution of a bench warrant, Plaintiff did not receive any such hearing. Plaintiff also did not receive a preliminary hearing within 14 days of his detention on the Board warrant as set forth in 37 Pa. Code § 71.2(3).

After more than two weeks of being detained in the Lawrence County Jail without ever receiving a hearing, Plaintiff was informed by Parole Agent Boozer on May 29, 2013 that Delaware County would be scheduling a *Gagnon* hearing[3] for Plaintiff. That same day, Plaintiff

---

[3]     As explained by our Court of Appeals:

> In *Gagnon v. Scarpelli*, the Supreme Court held that a person accused of violating the terms of his probation was entitled to two hearings before revocation and re-sentencing. *See Gagnon v. Scarpelli*, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The first, a *Gagnon I* hearing, serves to determine whether there was probable cause for

received a Notice of Charges and Hearing form from PBPP stating that "this notice is in reference to your upcoming: GAGNON I HEARING." However, no *Gagnon I* hearing was ever scheduled or held, and Plaintiff remained detained in the Lawrence County Jail for another month and a half.

On May 29, 2013, PBPP supervisor Hoerner e-mailed DCAPP supervisor Roney, reporting pressure by Lawrence County about Wilson still being there and asking if Delaware County would facilitate transport or if the Board needed to pursue on their end, and was informed that someone from Lawrence County needed to contact the District Attorney's Office and provided the name and telephone number to that person to set up extradition. As of May 31, Boozer's notes state: "Right now it does not appear that P w/be charged w/any crimes."

The record evidence further shows that the office in which Defendant Snyder, a Sergeant at the Delaware County Sheriff's Office, worked, was called several times regarding extradition transports to Delaware County. These calls went unanswered. Ms. King, an employee in the Records Department at the Lawrence County Jail in 2013, called Snyder and left a message on June 12, 2013 about Wilson's transfer. Ms. King then made another call on June 25, 2013 because Plaintiff's transfer had not yet occurred and Plaintiff had still not received his *Gagnon I* hearing. Boozer followed with a call on June 28, 2013, but the "phone rang off the hook." Boozer again contacted Roney, informing Roney that both he and personnel from the Lawrence County Jail had left several messages with the Sheriff's Office, without any response. Ms. King made another call on July 2, 2013. This time Snyder answered, whereupon she explained that a

---

the probation revocation. *Gagnon*, 411 U.S. at 782. The second, a *Gagnon II* hearing, determines whether the person in fact violated the conditions of his or her probation and whether s/he should be incarcerated. *Commonwealth v. Sims*, 770 A.2d 346, 349 (Pa. Super. Ct. 2001) (citing *Gagnon*, 411 U.S. at 784).

*Heilman v. T.W. Poness and Assoc.,* 2009 WL 82707, *1 n. 1 (3d. Cir. 2009).

petition hearing (as opposed to a *Gagnon I* hearing) for Wilson had been scheduled. The record evidence shows Snyder did not receive these calls or return because he was on vacation. Delaware County did not have a written policy or procedure to address this scenario.

About six weeks after Plaintiff was initially detained, on June 25, 2013, Plaintiff filed a petition for writ of habeas corpus in the Court of Common Pleas of Lawrence County. A hearing was held on this petition by President Judge Dominick Motto on July 15, 2013. At the hearing, Judge Motto noted that Plaintiff had not received *Gagnon* hearings and determined that Plaintiff's continued detention in the Lawrence County Jail was unlawful under Pa. R. Crim. P. 150. Consequently, Judge Motto ordered that the warden immediately release Plaintiff.

## II.     The Summary Judgment Standard

To prevail on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To assess whether the moving party has satisfied this standard, the court does not engage in credibility determinations, *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998), and views the facts and draws all reasonable inferences in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Pearson v. Prison Health Service,* 850 F.3d 526, 533-34 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181

(3d Cir. 2011)). Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

## III.    Discussion

In their motions Defendants argue they are entitled to entry of summary judgment for the following reasons:  1) the action is barred by the applicable statute of limitations; 2) the delay in having a hearing does not rise to the level of a violation of a 14th Amendment constitutional right to due process; 3) there is inadequate proof as to Defendants' personal involvement under § 1983; and 4) the individual defendants are entitled to qualified immunity.  Plaintiff has responded to each of these arguments.  The Court will address each argument *seriatim*.

### A.    Statute of Limitations

Hibberd is a supervisor at the Delaware County Office of Probation & Parole, and is an employee of the Delaware County Court of Common Pleas.   Hibbard was named as a defendant in the Third Amended Complaint ("TAC") on November 25, 2014, when plaintiff was proceeding pro se.  At that time, Hibberd and Roney were supervisors within the DCAPP, were located in the same office, and saw each other on a daily basis.  Hibberd was the Deputy Director of the DCAPP, a supervisory role she has held since June 2013.

On October 6, 2015, the court approved the stipulation to dismiss Hibberd.  [ECF No. 94].  It appears Hibberd was erroneously named as a defendant, plaintiff having alleged Hibberd was the individual who signed the Pennsylvania Board of Probation and Parole warrant to commit Plaintiff to prison and thus, was responsible for his incarceration and the failure to

provide him with a Gagnon hearing.  On February 5, 2016, after Hibberd was dismissed, Plaintiff filed an unopposed Motion for Leave to File a Fourth Amended Complaint, requesting permission to name Roney, Delaware County and Snyder as additional defendants.  The Fourth Amended Complaint was subsequently filed on February 9, 2016.  [ECF No. 100].

On September 30, 2016, this court entered a Memorandum Opinion and Order denying the Motion to Dismiss filed by Roney, who had argued that claims against him were barred by the statute of limitations.  [ECF No. 138]. Relying on the shared attorney method as well as the sufficiency of the nexus of interest between Roney and a prior defendant Hibberd we held that Plaintiff has established that the Fourth Amended Complaint and its claims therein asserted against Roney relate back to the earlier timely filed TAC and denied Roney's motion to dismiss. [ECF No. 138 at 6-12].   We also denied the Motion to Dismiss filed by Delaware County and Snyder, noting Plaintiff "Wilson has demonstrated a sufficient nexus exists between Hibberd, Sgt. Snyder, and Delaware County such that we may infer that Sgt. Snyder and Delaware County received notice of this action when the third amended complaint added Hibberd as a defendant." [ECF No. 139 at 13.]

At the close of discovery, all Defendants filed a first round of motions for summary judgment in this case, and on December 21, 2017 the court filed a Memorandum Opinion and Order (now vacated) denying said motions.  [ECF No. 192].   In their motions, Defendants Roney, Delaware County, and Snyder again argued that the statute of limitations barred this action.  They argued that was no evidence that Snyder, Delaware County or Roney received actual notice of the matter prior to being served with the Fourth Amended Complaint or that they shared representation with any of the original defendants within the 120-day period after the filing of the original complaint.  Plaintiff responded by arguing he would be prejudiced because

he did not pursue discovery on this issue, having assumed based upon our earlier ruling on the motions to dismiss that the doctrine of the law of the case foreclosed further argument. Plaintiff requested he be afforded an opportunity to pursue additional discovery on this issue. We granted that request. The Memorandum Opinion and Order [ECF No. 192] was vacated by court order pending completion of supplemental discovery on the narrow issue of statute of limitations. [ECF No. 196].

Upon completion of the supplemental discovery, the pending motions for summary judgment were filed, together with supporting and responding briefs and concise statements of undisputed fact. We now consider the motions for summary judgment *de novo.*

The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose, which in Pennsylvania is two-years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007) and 42 Pa. Cons. Stat. § 5524(2)). The accrual date, which governed by federal law, *Wallace,* 549 U.S. at 388, in this case is, at the very latest, July 15, 2013, the date that Judge Motto ordered that Plaintiff be released from the Lawrence County Jail. Therefore, applying the applicable two-year statute of limitations, the statute of limitations expired on July 15, 2015. The Fourth Amended Complaint, which was submitted on behalf of Plaintiff after he retained counsel, was filed on February 9, 2016, approximately seven months after the statute of limitations expired.

Rule 15(c) of the Federal Rules of Civil Procedure provides for relation back when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). Accordingly, a plaintiff seeking to add a new party under Rule 15 needs to show: "(1) the amended pleading relates to the same conduct, transaction or occurrence set forth in the original complaint; (2) within the 120–day time period set forth in Rule 4(m), the proposed new defendant had notice of the action; and (3) the proposed new defendant knew or should have known that but for a mistake of identity of the proper party, he would have been named in the initial complaint." *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 (3d Cir. 1996). Defendants Roney, Snyder and Delaware County challenge whether Plaintiff has met the second prong, i.e. that these defendants had notice of the action within the 120-day time period. There is no dispute that the first prong is met, as the claims raised against the defendants arise out of Plaintiff Wilson's unlawful detention; nor is there any disagreement that the third prong is met because while Plaintiff, who filed this action *pro se*, knew that his constitutional rights were violated, he did not know the identities of the relevant parties until discovery revealed them.

The United States Court of Appeals for the Third Circuit recognizes two methods of imputing notice, or constructive notice. First, the shared attorney method "is based on the notion that when the originally named party and the parties sought to be added are represented by the same attorney, 'the attorney is likely to have communicated to the latter party that he may very well be joined in the action.'" *Garvin v. City of Philadelphia,* 354 F.3d 215, 222-23 (3d Cir.

2003). "The relevant inquiry under this method is whether notice of the … action can be imputed to [Moving Defendants] within the relevant 120 day period … by virtue of representation [Moving Defendants] shared with a defendant originally named in the lawsuit." *Singletary v Pennsylvania Department of Corrections*, 266 F.3d 186, 196 (3d Cir. 2001). Second, the "identity of interest" method, which is closely related to the shared attorney method, "generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id*. at 197 (quoting 6A Charles A. Wright et al., Federal Practice and Procedure § 1499, at 146 (2d ed. 1990)). Under the identity of interest method, "a nonmanagement employee … does not [generally] share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to employee for Rule 15(c)[(1)(C)(i)] purposes," *id*. at 199, although courts within the Third Circuit have concluded that notice can be imputed to the new defendant under this method if he occupied a similar supervisory role as the previous named defendant. *See Ammouri v. AdapptHouse, Inc.,* 2008 WL 2405762, * 5 & n. 11 (E.D. Pa. 2008); *Montanez v. York City, Pa.*, 2014 WL 671433, *6 (M.D. Pa. 2014); *Ward v. Taylor*, 250 F.R.D. 165, 169 (D. Del. 2008).

1. Notice to Defendants Snyder and Delaware County

Hibberd is a deputy supervisor at the Delaware County Office of Probation & Parole, and an employee of the Delaware County Court of Common Pleas, a separate and distinct entity from the County of Delaware. Snyder and Delaware County, relying on the identity of interest theory, argue that plaintiff has not shown that they as newly named defendants are "so closely related in their business operations or other activities that the institution of the action against one serves to provide notice of the litigation to the other." *Singletary,* 266 F.3d at 197. They explain Plaintiff

has not provided any evidence to support the assertion that Jason G. Bates, Esquire, a former attorney of Holsten & Associates, who was representing Hibberd, would have discovered that Hibberd was not involved in the alleged constitutional deprivation but rather, Snyder and Delaware County were, and thus, he would have communicated to Snyder and Delaware County (or the Delaware County Sheriff's Office) that they may be joined in the action.

In response, Plaintiff acknowledges that Hibberd and Snyder worked in two distinctly separate entities (Hibberd at DCAPP, and Snyder at the Delaware County Sherriff's Office). Plaintiff emphasizes Snyder's testimony that when performing an extradition transport, there are times when DCAPP (where Hibberd works) would contact him to perform transports. According to Plaintiff these communication and collaboration creates a sufficient nexus of interest to impute notice to Defendants for Rule 15(c)(1)(C) purposes. This line of argument is tenuous at best, and the record evidence, even after supplemental discovery, has not born out this theory. There are not "closely related operations and activities" in this instance such that the institution of this action against Hibberd would serve to provide notice of the litigation to Snyder and Delaware County through the identity of interest theory.

Plaintiff also argues that through the "shared attorney" method, notice can be imputed to these defendants. The law firm Holsten & Associates represented Hibberd and now represents Snyder, Delaware County and Roney. Plaintiff states that Holsten represented both Hibberd and Delaware County within 120 days of the filing of the TAC, and had entered its appearance on behalf of Hibberd during the 120day time period, i.e. from November 25, 2014 through March 30, 2015. In addition, Holsten & Associates filed a motion to dismiss on Hibberd's behalf [ECF No. 67] on January 30, 2015. Plaintiff further explains that Holsten was representing Delaware County and the DCAPP and/or their respective employees in numerous other actions unrelated to

this one. Discovery revealed that the relationship between Holsten, Delaware County and DCAPP was so well-established that formal engagement letters were not used. Arthur J. Gallagher & Co., a risk management firm that manages claims involving DCAPP and Delaware County, assigned cases to Holsten. When Holsten received the case assignment for Hibberd, a representative from Gallagher advised that the case was under the County's self-insured program. This regular representation suffices to establish constructive notice of the instant action within the statutory period, as the case law cited by Plaintiff finds. *Browning v. Safmarine, Inc.,* 287 F.R.D. 288, 292 (D. N.J. 2012), *Ferencz v. Medlock*, 905 F. Supp.2d 656, 699 (W.D. Pa. 2012), and *Smith v. City of Philadelphia*, 363 F.Supp.2d 795, 801 (E.D. Pa. 2005).

Attorney Bates of Holsten & Associates represented Hibberd after the original complaints were filed but left Holsten & Associates before the Fourth Amended Complaint was filed and served. There is sufficient evidence to infer he would have communicated information about the case to Delaware County or Snyder within the 120 days required by Rule 15. *Garvin v. City of Philadelphia*, 354 F.3d 215, 223 (3d Cir. 2003) (under the "shared attorney" method of imputing notice, "the applicable test is not whether the new defendants *will* be represented by the same attorney, but rather whether the new defendants *are* being represented by the same attorney"). There is no indication that defendants have been prejudiced in maintaining a defense on the merits.

Accordingly, after a careful examination of the record evidence in this case, we conclude that that the institution of this action against Hibberd served as a timely notice of the litigation as to defendants Snyder and Delaware County under the shared attorney theory. Therefore, Plaintiff's claims against these two defendants are not barred by the statute of limitations and the motion for summary judgment will be denied in that regard.

2. Notice to Defendant Roney

Defendant Jeffrey Roney, a supervisor at DCAPP, also argues that this action is barred by the statute of limitations. Roney was first named in this case in the Fourth Amended Complaint filed on February 9, 2016. As with Snyder and Delaware County, the court initially denied Roney's Motion to Dismiss on the basis of the expiration of the statute of limitations on the grounds that attorney Bates would have had the opportunity to investigate Plaintiff's claims while preparing Hibberd's Motion to Dismiss and was likely to have communicated to Roney that Roney may be joined in the action. After the close of discovery on this issue, Roney argues Plaintiff has failed to offer proof to this claim. As with Snyder and Delaware County, at the point at which Plaintiff sought to add Roney as a party, Hibberd was no longer a party and attorney Bates was no longer an attorney in the case. Like the circumstances surrounding Snyder and Delaware County, it is safe to presume that attorney Bates would have investigated the claims against Hibberd within the relevant time period, unearthing Roney's knowledge and personal involvement in the case; the lawsuit was erroneously filed against Hibberd alleging she was the individual who signed the Pennsylvania Board of Probation and Parole warrant to commit Plaintiff to prison and thus, was responsible for his incarceration and the failure to provide him with a Gagnon hearing. We therefore find that the shared attorney method of imputing notice is applicable to defendant Roney.

Moreover, notice may be imputed under the identity of interest method given the relationship between Roney and former defendant Hibberd. At the time Hibberd was named in the TAC on November 25, 2014, both Hibberd and Roney were (and still are) supervisors within the DCAPP, were located in the same physical office, and saw each other on a daily basis.

Accordingly, timely institution of this action against Hibberd served to provide timely

notice of the litigation to Roney, and the motion for summary judgment will be denied in this regard.

**B.    Section 1983**

Defendants also asserts that summary judgment should be entered in their favor as to Plaintiff's 14th Amendment claims brought pursuant to Section 1983.    To state a viable § 1983 claim, the plaintiff must sufficiently plead that (1) the conduct complained of was committed by a person acting under the color of state law[4], and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  See *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).  To that end, a defendant in a civil rights action must have personal involvement in the alleged wrongs.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  The Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend XIV, § 1.  "A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law."  *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (citation and internal marks omitted).

In *Gagnon v. Scarpelli*, the Supreme Court held that "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing."  411 U.S. 778, 782 (1973).  Plaintiff asserts that Defendants deprived him of his constitutional right to receive the preliminary *Gagnon I* hearing while he was being held for more than two months in the Lawrence County Jail.  The law is clear. "At the preliminary [*Gagnon I*] hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence on his own behalf, a conditional right to confront adverse witnesses, an

---

[4] There is no dispute that the individual defendants were acting under color of state law.

independent decision maker, and a written report of the hearing." Id. at 786 (citing *Morrissey v. Brewer*, 408 U.S. 471, 478 (1972)).

### 1. *Defendant Roney*

Roney does not dispute that Plaintiff was entitled to a *Gagnon I* hearing during his detention in the Lawrence County Jail. He rather contends that the 64 days without a preliminary revocation hearing is not unconstitutional, and that he was not personally involved in the alleged deprivation. Roney relies upon inapplicable case law which addresses the timing of the second, final revocation hearing rather than the relevant *Gagnon I* preliminary hearing at issue in this case. Moreover, there are genuine issues of material fact as to Roney's personal involvement in the deprivation sufficient to allow this case to proceed to trial. A reasonable factfinder could conclude that Roney had stepped into the role as a point of contact for Boozer, offering to help obtain the bench warrant as well as making arrangements as to the scheduling of the *Gagnon I* hearing. The record evidence reflects that Roney represented that an in-person hearing in Delaware County (rather than by video conference) was necessary, and that Roney may have delayed the requisite hearing by failing to respond to Boozer and failing to arrange for Plaintiff's transportation to Delaware County. A reasonable factfinder could conclude, based on the record evidence before us, that Defendant Roney was fully aware that Plaintiff continued to be detained without any *Gagnon I* hearing, yet he failed to take any steps to ensure that Plaintiff's constitutional rights did not continue to be violated, and he failed to inform the appropriate person in his office of the need for a hearing, later apologizing for certain errors.

### 2. *Defendant Snyder*

Even if Plaintiff's claims against Defendant Snyder were not barred by the statute of limitations, Snyder would be entitled to summary judgment in his favor. Defendant Snyder

argues that he was not personally involved in the deprivation of Wilson's constitutional rights because he was not responsible for Wilson's transport.

In addition to the factual background stated *supra*, we note the following. Snyder and Delaware County have submitted a Statement of Undisputed Material Facts ("Snyder/ Delaware SUMF", ECF No. 211) to which Plaintiff has responded. [ECF No. 226].

Snyder, a sergeant with the Delaware County's Sheriff's Office, works in the Sheriff's Office transportation division. [Snyder/Delaware SUMF at ¶¶ 1, 2.] Snyder's duties are to prepare daily jail lists for inmates who are being transported from the Delaware County jail to the Delaware County courthouse, as well as working with his lieutenant to set up dates to transport inmates incarcerated in other counties to the Delaware County Jail. [Snyder/Delaware SUMF at ¶ 3.] The transportation process begins with a phone call or fax from whatever agency is requesting the inmate be transported, whereupon Snyder meets with his lieutenant, who schedules the assignments of deputies and trips for a particular day. [Snyder/Delaware SUMF at ¶¶ 4, 5.] After meeting with his lieutenant and after his lieutenant makes out the schedule for the transportation and assigns the deputies who will make the trip, Sgt. Snyder contacts the out-of-county agency requesting the inmate's transportation and gives them a pick-up date; at the time of the events herein (May 2013 through July 2013) Snyder's lieutenant was William Musser, who has since retired. [Snyder/Delaware SUMF at ¶¶ 6, 7.] Musser was in charge of the extradition unit, and Plaintiff's transportation was considered an extradition. [Snyder/Delaware SUMF at ¶¶ 8, 9.] In matters involving an extradition transport, as opposed to a transportation involving a local county, the lieutenant would handle all matters relating to the transportation, such as checking whether a proper detainer was in place, and making the phone calls with the out-of-county agency, and would ensure transport. Snyder testified he has never dealt with the

Lawrence County jail in an extradition. [Snyder/Delaware SUMF at ¶¶ 10, 11.] Snyder further testified that he was unaware of who Plaintiff was until he received notice of this lawsuit. [Snyder/Delaware SUMF at ¶ 13.] Prior to 2013, Plaintiff had been transported from the Lawrence County Jail to the Delaware County jail on two occasions, in 2010 and 2011. [Snyder/Delaware SUMF at ¶ 14.]

In response to these facts of record, Plaintiff notes that Snyder also testified that part of his duties are to direct entities to the correct contact person, he being the only person listed in the county telephone directory for transportation. [ECF No. 226 at p. 6, ¶ 13.] Snyder "get[s] a lot of calls that don't pertain to [him]. And [he] direct[s] that call to . . . whoever it needs, that they need to talk to." [ECF No. 226 at p. 6, ¶ 14.] Snyder appears to have been on vacation for two weeks at the end of June, 2013, and he does not recall any voicemails left by King, the employee in the Records Department of the Lawrence County Jail who left several messages. [ECF No. 226 at p. 8, ¶ 32.] Typically, when Snyder is unavailable, calls either go to voicemail, or if someone is sitting for him, that person takes care of the matter. [ECF No. 226 at p. 6, ¶ 37.]

The evidence of record shows that no reasonable factfinder could conclude that Snyder took action or otherwise should be found culpable for violating Plaintiff's constitutional rights. His job was to arrange the staffing of sheriff's deputies who would transport incarcerated probationers <u>after</u> a hearing had been scheduled; his job does not include scheduling hearings. Absent a scheduled hearing and the completion of requisite paperwork (which, it is uncontroverted, would have been completed by his supervisor), Snyder had no role in the process of scheduling a *Gagnon I* hearing. PBPP Parole Agent Boozer never spoke to Snyder or left a message; he testified "the phone rang off the hook"; no evidence of record establishes that anyone else responsible for scheduling ever spoke to Snyder prior to July 2, 2013. No

reasonable factfinder could conclude that Snyder was personally involved in the deprivation of Plaintiff's constitutional rights. Therefore, summary judgment will be granted as to Defendant Snyder.

### 3. *Defendant Delaware County*

The liability of a municipality under 42 U.S.C. § 1983 is governed by *Monell v. Department of Social Services,* 436 U.S. 658 (1978). Municipalities cannot be found vicariously liable under the doctrine of respondeat superior for claims that their employees violated an individual's civil rights. *Board of County Commissioners of Bryan County. v. Brown*, 520 U.S. 397, 403 (1997). Rather, a plaintiff seeking to hold a municipality liable for a civil rights violation caused by a municipal employee must prove (1) the existence of a custom or policy of the municipality (2) pursuant to which the municipality's employee violated the plaintiff's civil rights. *Monell*, 436 U.S. at 694; *see also Bryan Cnty.*, 520 U.S. at 403; *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000).

Plaintiff argues that Delaware County failed to implement any policies or procedures to ensure the prompt transportation of probationers or to ensure that one employee's vacation does not lead to a failure to transport. Delaware County argues that it is entitled to summary judgment as there is no evidence in the record to support an inference that it had a policy or custom of refusing, or alternatively, failed to have in place, the necessary procedures for transportation of probationers held outside of the County and/or scheduling the applicable hearings under these circumstances. The record evidence shows that even if a reasonable factfinder could conclude that Delaware County lacked such policies or procedures, and to the extent its employees were not adequately trained, there is no pattern of similar constitutional violations by untrained employees sufficient to give rise to deliberate indifference. *Bryan Cnty.*, 520 U.S. at 404*; Berg*,

219 F.3d at 276. The record does not show any pattern of constitutional violations by untrained employees or that Delaware County's policymakers knew or could have known that a failure to train caused violation of constitutional rights. This appears to be a single, unprecedented incident. A "policy of inadequate training" is "far more nebulous and a good deal further removed from the constitutional violation, than was the policy in *Monell*." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 822-23 (1985). There is no dispute that Wilson had previously been transported without incident from Lawrence County to Delaware County for other *Gagnon* hearings prior to 2013, once in 2010 and again in 2011. More to the point, there is no record evidence of any pattern of constitutional violations by untrained employees of Delaware County as to any other *Gagnon* hearings such that Delaware County can be held accountable for failure to train and considered to have acted with deliberate indifference. Delaware County does not appear to have been responsible for the scheduling of hearings, but rather, was responsible for transportation of probationers after a hearing has been scheduled. Plaintiff has not established causation such that a reasonable fact finder could conclude that the Sheriff's office and Delaware County were responsible for the unconstitutional failure to schedule the hearing.

Therefore, in the absence of any genuine dispute of material fact, Delaware County's motion for summary judgment will be granted.

### 4. *Defendants Boozer and Hoerner*

Defendants Boozer and Hoerner move for summary judgment and argue that they were not personally involved and their office had no control over Wilson's placement. However, the record evidences shows that a reasonable factfinder could disagree, and could instead find that both had knowledge that he was being detained without a timely *Gagnon I* hearing and failed to take any appropriate action to prevent it, and furthermore, they took affirmative steps in

obtaining the initial detainer and later, the bench warrant, without "checking the box" and ensuring that a *Gagnon I* hearing would be scheduled. Defendants Boozer and Hoerner concede that Wilson did not receive a *Gagnon I* hearing during his 64-day incarceration. They believed their 14-day warrant had expired yet took no further action to provide him with a hearing. Boozer testified that Wilson has a "legitimate complaint" and that "If I was that probationer, I would be angry." Boozer and Hoerner were personally involved in the securing of the board and court detainers. On July 17, 2013 (two days after Wilson's release), Hoerner sent an email stating "I'm respectfully requesting that acceptance of this case be rescinded and the case be sent back to Delaware County due to the lack of provision of due process and the inability of PBPP to enforce any of its conditions." In the end, drawing all inferences in Plaintiff's favor, a reasonable jury could find that these defendants contributed to the deprivation of Plaintiff's rights.[5]

It is therefore respectfully recommended that the motion for summary judgment as to defendants Boozer and Hoerner be denied.

### C.    Qualified Immunity

Defendants also contends that they are entitled to qualified immunity. Under a qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

We need not address the matter of qualified immunity as to Defendant Snyder. As to the

---

[5] Defendant PBPP has also argued it is entitled to 11th Amendment immunity. [ECF No. 214 at 18-19]. Plaintiff responds that he "did not sue the PBPP; rather the PBPP Defendants in this case are all individuals who were personally involved in the deprivation of Wilson's rights by virtue of actions or inactions taken in their individual capacities. (ECF No. 100)." [ECF No. 219 at 14]. PBPP is named as a Defendant in this case. Accordingly, we will direct Plaintiff to file a motion voluntarily withdrawing any claims as to PBPP.

defendants Boozer, Hoerner, and Roney, who are sued in their individual capacities, in light of the record before us, there is a genuine issue of material fact that they personally participated in the deprivation of Plaintiff's clearly established constitutional right; that is, the right of a probationer to receive a preliminary hearing as set forth in *Gagnon*. Defendant Boozer (in charge of Plaintiff's supervision) and Hoerner failed to take appropriate steps to get a hearing scheduled, seeking a withdrawal of the board warrant, or requesting the detainers be rescinded despite knowing a hearing had not been scheduled. Hoerner did not request the hearing on the PBPP-331 form, nor did he follow up on complaints that Plaintiff was illegally detained. Defendant Roney actively assisted Boozer in obtaining the warrant and frequently communicated with Boozer regarding the need for the hearing. Roney inaccurately informed Boozer that Plaintiff had to be transported, gave the wrong contact information as to who should schedule transportation.

Therefore, Roney, Boozer and Hoerner have failed to meet their burden to show that they are entitled to qualified immunity and summary judgement will be denied in that regard.

## IV. Conclusion

In accordance with the foregoing, summary judgment will be entered in favor of Defendants Snyder and Delaware County, but denied as to Defendants Roney, Boozer, and Hoerner. An appropriate Order follows.

DATED: October 17, 2018                    /s/ Cynthia Reed Eddy

                                           Cynthia Reed Eddy
                                           United States Magistrate Judge


cc: record counsel via CM-ECF

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILBERT WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-1529 |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS HOERNER, Probation Officer | ) | |
| Supervisor, JEFFREY BOOZER, | ) | |
| Probation Officer, MARY ROSETTA, | ) | United States Magistrate Judge |
| Case Manager for Probation and Parole, | ) | Cynthia Reed Eddy |
| JEFFREY RONEY, BRYAN SNYDER, | ) | |
| and DELAWARE COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW,** this 17th day of October, 2018, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED** that:

1. the Motion for Summary Judgment filed by Defendant Jeffrey Roney [ECF No. 204] is **DENIED**;

2. the Motion for Summary Judgment filed by Defendants Delaware County and Bryan Snyder [ECF No. 203] is **GRANTED**;

3. the Motion for Summary Judgment filed by Defendants Jeffrey Boozer and Dennis Hoerner [ECF No 213] is **DENIED**.

IT IS FURTHER ORDERED THAT Plaintiff shall file an appropriate motion with

respect to his intention to voluntarily withdraw claims against defendants Mary Rosetta and the

Pennsylvania Board of Probation and Parole on or before **November 2, 2018**.

_s/ Cynthia Reed Eddy_
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF